14 So.2d 48

**EDWARDS v. HAYES et al.**

No. 36758.

May 17, 1943.

Eugene Stanley, Atty. Gen., W. C. Perrault, Second Asst. Atty. Gen., and R. H. Lee, Sp. Asst. Atty. Gen., for appellants.

Ponder & Ponder, of Amite, for appellee.

HIGGINS, Justice.

This is an action by the Sheriff of Tangipahoa Parish against the Supervisor of Public Accounts (now Supervisor of Public Funds) and his representatives, the Crime Commission and its members and agents, and the Superintendent of the State Highway Police and its employees, to restrain them from taking possession of the

books, records, and tax rolls of the Sheriff's office; from interfering with and usurping the functions of his office as Sheriff and Tax Collector; from placing any agents or appointees in his office for the purpose of making any further audit; and from taking possession of and removing any books and records from his office.

In the original and supplemental petitions the plaintiff alleges that he is the duly elected and qualified Sheriff of the Parish of Tangipahoa, entitled to perform the duties of his office until removed therefrom in the manner provided by the Constitution and laws of this State; that during the past four months, under the authority of the Crime Commission and the Supervisor of Public Funds, his office has been besieged by a group of auditors and investigators who have taken numerous records from his office and while these records were in their custody, they were destroyed, misplaced, lost, or otherwise disposed of by them; that the auditors had completed the annual audit through June 30, 1941, and later, on or about July 15, 1941, returned and demanded that he again re-submit certain records for re-examination, particularly from the period of June 30, 1941, to July 15, 1941; that due to the fact that the records were in the possession of the defendants, he was unable to post his books or prepare his annual tax roll and return to the State Auditor, which was due July 20, 1941; that on July 18, 1941, upon informing the Supervisor of Public Funds that he would have to wait until later to again obtain the records he was using, he was informed that the records

would be seized by the Supervisor of Public Funds with the assistance of the State Police; and that the defendants' action was a part of a scheme through excessive and abusive audits to force the plaintiff out of office.

The trial judge issued a temporary restraining order and a rule nisi to show cause why a preliminary injunction should not issue.

The defendants admitted that the audit had been conducted under Act No. 109 of 1918, as amended, for a period of four months; that a great many records in the possession of their agents and employees had been removed from the courthouse to their hotel rooms for examination and to Baton Rouge for the purpose of being photostated and that others were placed in an unlocked roll top desk in the Police Jury room in the courthouse at Amite on June 17, 1941; that, when the auditors resumed their work on June 18, 1941, the records which had been placed in the desk in the Policy Jury room had disappeared during the night and they did not know what had become of them; that the plaintiff had made tax settlements with the State of Louisiana and the political subdivisions of the Parish of Tangipahoa, in accordance with previous audits of his Tax Collector's accounts; and that the Supervisor of Public Funds, on July 18, 1941, by telephone, informed the plaintiff that there was a discrepancy in his tax account of 1940 of about $6,000, and he would audit and inspect the records under the protection of the State Police, if necessary. The defendants denied that there was any plot or in-

tention on their part to force the plaintiff out of office with the assistance of the State Police, and averred that the plaintiff had resorted to the methods he was employing as a scheme to conceal his official unfaithfulness and misconduct in embezzling the $6,000 of public funds, which he had in his official custody.

On July 23, 1941, the plaintiff instituted mandamus proceedings against the Supervisor of Public Funds and his agents to return the records which they allegedly had illegally seized and removed from his office. An alternative writ of mandamus was issued and made returnable on July 28, 1941, the same day on which the trial judge was to try the rule nisi in the injunction suit.

The defendants in their return admitted that certain records had been removed from the Sheriff's office and that they had returned them to the office of the Clerk of Court, with the exception of the ones that had been taken from the roll top desk in the Police Jury room on June 17, 1941.

It was stipulated that the rules nisi in the mandamus and injunction proceedings be tried jointly and that separate judgments be rendered.

In the trial of the case the Sheriff and his Chief Deputy testified that the auditors of the Crime Commission, prior to April, 1941, and after that date, about six or seven of the auditors of the Supervisor of Public Funds practically took complete possession of his office and his records, which he turned over to them, in order to make an audit; that the audit was extended back in some instances to 1928, as he was then serving his fourth four-year term in office; that these auditors were constantly in charge of his records until June 30, 1941, when they completed the audit and left; that he then began to post his accounts and to make up his records for his tax roll of 1940 so as to present it to the State Auditor by July 20, 1941; that it has been customary for the Sheriff, as Tax Collector, to accept from people in indigent circumstances postdated checks so as to give them additional time within which to pay their taxes and thereby avoid having their homes or farms sold at tax sale; that on July 15, 1941, two of the Supervisor's representatives called at the Sheriff's office and informed him that as a result of the audit he was $6,000 short in his 1940 tax account; that he thereupon informed them that on July 12, 1941, he had deposited in the Tax Collector's account in the bank sufficient money to cover post-dated checks or the discrepancy and presented to them the bank book evidencing the deposit; that they verified the accuracy of this information at the bank and left his office; that on July 17, 1941, they returned and wanted to re-examine certain records in his possession and as he was posting his books and getting up his report of tax collections for the State Auditor, in order to obtain his quietus, he refused them permission to do so; that he was willing to assist them but they failed to co-operate with him by keeping everything secret from him and then circulating rumors and public reports that he was short in his tax collection account and that he would be removed from office; that the Supervisor did not give him

nor the Attorney-General a copy of his report; that upon being informed by the Supervisor that he would obtain the records with the use of the State Police, he resorted to court to prevent the usurpation of his office and any further arbitrary or unreasonable auditing; that on the morning of July 18, 1941, several newspaper representatives and photographers came to the Sheriff's office and after telephoning long distance several times left, when it appeared that there would be no trouble; that it was because of the issuance of the injunction that the State Police failed to make their appearance; and that heretofore the audit of his books was made by one or two auditors and they completed the audit in about a week or ten days and he had always received a quietus, but that this time the Supervisor employed eight or ten auditors for four months and they had not completed the audit.

The plaintiff also placed on the witness stand one of the police officers of the City of Hammond, who stated that on the morning of July 18, 1941, several automobile loads of State Police arrived in Hammond.

The several auditors of the Supervisor, as well as one who worked for the Crime Commission, testified that they began the audit in April, 1941, and ended it on June 30, 1941; that they removed certain records to the Police Jury room and placed them in an unlocked roll top desk where during the night of June 17, 1941, they were taken by persons unknown to them and that they had not seen them since; that the other records had been taken to the hotel rooms for examination and to Baton Rouge where some of them were photostated and the ones inventoried in the answer returned to the Clerk of Court's office; that they had completed the audit of the papers that disappeared from the Police Jury room; and that they had reported to the Sheriff that the records were missing and he had promised to investigate the matter.

Jerome A. Hayes, Supervisor of Public Funds, denied that he had any intention of forcibly ejecting the Sheriff from his office with the assistance of the State Police and only asked for their protection in the assertions of his right to the custody and inspection of the records in the Sheriff's office, but admitted that even after he had notice of the restraining order of the court he had issued to a daily newspaper a statement which charged the Sheriff with being a defaulter or embezzler of tax funds to the extent of $6,000.

After a trial, the district judge rendered judgment in favor of the plaintiff and against the Supervisor of Public Funds and his agents and auditors making the alternative writ of mandamus peremptory and ordering him and his agents and auditors to return the books and records named in the judgment, except the records which had been returned to and deposited in the office of the Clerk of Court.

In a separate judgment, he granted a preliminary injunction restraining the defendants (except the Crime Commission and its members, against whom the suit was dismissed—Act No. 13 of 1940 having been held to be unconstitutional—Stewart et al. v. Stanley, et al., 199 La. 146, 5 So.

2d 531) as prayed for by the plaintiff, and any further audits were enjoined, except the next regular annual audit of the tax collections and the semi-annual audit of the Sheriff's salary fund, as provided by law, "unless and until a further audit was shown to be necessary."

The Supervisor of Public Funds and the Superintendent of the State Police appealed from the judgments in both suits to the Court of Appeal of the First Circuit, resulting in the dismissal of the mandamus suit (Edwards v. Hayes et al., 7 So.2d 630) and the transfer of the appeal in the injunction suit for lack of jurisdiction to this Court, in accordance with the provisions of Act No. 19 of 1912. 7 So.2d 628.

In this Court, the plaintiff filed a plea of abatement, acquiescence, and abandonment, and also a plea of estoppel, and asked that the appeal be dismissed on the ground that the issues presented had become moot, alleging that the plaintiff had obtained from Honorable L. B. Baynard, Auditor of the State of Louisiana, a quietus for the year 1940 and one for the year 1941, both of which were dated July 21, 1942, based upon annual tax collection audits which had been made subsequent to June 30, 1941; and that the action had abated because the preliminary writ of injunction lapsed by its own terms before the next regular annual audit of tax collections and the next semi-annual audit of the Sheriff's salary funds and these audits had been made.

Annexed to the motion to dismiss the appeal are certified copies of the quietuses for 1940 and 1941. These documents,

which are identical, the only difference being in the year, read:

"Auditor's Office. No. —— 918

"State of Louisiana

"Baton Rouge, La., July 21, 1942.

"Whereas, Hon. Frank M. Edwards, Tax Collector in and for the Parish of Tangipahoa has exhibited to me the undersigned Auditor of the State of Louisiana the receipts of Hon. A. P. Tugwell, State Treasurer, in full for the payment of State Taxes for the year 1941. (The other quietus is for the year of 1940 and was also dated July 21, 1942.)

"I therefore issue this Quietus on the part of the State of Louisiana in favor of said Hon. Frank M. Edwards and against any claim on the part of the State for the Taxes and Licenses of the year above stated.

"Given under my hand and seal of office the day and date above written.

(Sgd.) "L. B. Baynard

"Auditor, State of Louisiana."

(Brackets ours.)

The pertinent part of Section 3 of Act No. 109 of 1918 reads: "The said Supervisor of Public Accounts (now the Supervisor of Public Funds) * * * shall prepare a statement of the result of the examination of the accounts of each tax collector as early as practicable after each examination is made, and shall furnish the Auditor of Public Accounts with a copy thereof * * *." Apparently, based upon this report of the Supervisor and the receipts of the State Treasurer, the quietus for 1940 and the one for 1941 were issued. Furthermore, it appears that the injunction has expired by its own terms. There-

fore, this case now presents only moot questions.

Counsel for the defendants argue that as this is a matter relating to public affairs, even though the issues have become moot, the Court should render an opinion clarifying the rights of the Supervisor of Public Funds to make audits of the Sheriff's records.

This Court is without authority to render declaratory judgments and any expression of opinion by the Court with reference to moot questions would be obiter dicta.

The learned attorneys for the defendants further contend that it appears from a document dated November 14, 1941, initialed "R. F. R." (R. F. Roberts) and addressed to W. W. Anspach, written on the Supervisor's stationery, the Sheriff has taken the view that his records could not be audited under the injunction for any date earlier than July 15, 1941. This document is annexed to the motion to advance the case for hearing here. It is an ex parte statement and even if it were entitled to effect, it is sufficient to say that the writ of preliminary injunction merely restrains the Supervisor from making any further audit until the next regular annual audit of tax collections and the next regular semi-annual audit of the Sheriff's salary fund as provided by law, and as that period of time has elapsed since the judgment was signed on September 3, 1941, the preliminary writ of injunction has expired by its own terms.

It is well-settled that this Court will not consider on appeal issues that become moot. Kean's, Inc., v. Willoughby, La.App., First Circuit, 149 So. 237; Gulf Coast Const. Co. v. Adams, 165 La. 873, 116 So. 217; Chaffe v. City of Minden, 170 La. 266, 127 So. 623; Browne v. Levy, 14 La.App. 645, 130 So. 633; and Elliott v. Amite Bldg. & Loan Ass'n, La.App., First Circuit, 179 So. 318.

For the reasons assigned, the motion to dismiss the appeal is sustained, and accordingly the appeal is dismissed.

ODOM, J., absent.

PONDER, J., recused.