310 So.2d 537 (1975)
In re Michael BAER.
No. 55409.
Supreme Court of Louisiana.
March 31, 1975.
Harry F. Connick, Dist. Atty., William F. Wessel, First Asst. Dist. Atty., for relator, Parish of Orleans.
Devan D. Daggett, Jerry J. Guillot, Baton Rouge, William J. Wegmann, Jr., New Orleans, for respondent, Legislative Committee.
William J. Guste, Jr., Atty. Gen., Julian R. Murray, Jr., Barbara B. Rutledge, Asst. Attys. Gen., George T. Mustakas, II, Staff Attorney, New Orleans, for State of La., Intervenor.
PER CURIAM
The respondent, Michael Baer, a legislative aide, was subpoenaed by the Orleans Parish Grand Jury. The intention was to secure from Baer information as to criminal activity in Orleans Parish which he had obtained while serving as staff member to a legislative committee conducting an investigation.
The trial court modified the subpoena to exclude questioning the respondent Baer *538 concerning all information he had obtained in his official legislative capacity. We granted certiorari, 301 So.2d 50 (1974), to review the district attorney's contention that no legislative privilege extends so as to prevent the grand jury from obtaining evidence of crime committed in the parish.
Since certiorari was granted, the legislative investigation has been completed. All information possessed by Baer (except the names of confidential informants) has been made available to the district attorney.
As to the confidential informers, the evidence indicates that Baer had learned of their identity solely through his work as legislative aideeither from legislators or in attending executive meetings of the legislative committee or in representing the committee at interviews between police officers and such informants. The informer privilegebased on the need of assuring a free disclosure of information to a governmental source through assuring against unnecessary disclosure of the informer's identityis generally recognized in Louisiana, although the promised secrecy may be required to yield to competing interests of other constitutional or governmental interests where circumstances show the overriding weight of the latter. Pugh, Louisiana Evidence Law 187-88 (1974); also, 31 La.L.Rev. 384 (1971). See McCormick on Evidence, Section 111 (2d ed. 1972); Comment, 63 Yale L.J. 206 (1963). The ruling whether exceptional circumstances justify disclosure clearly cannot and should not be made in the abstract.
No practical result, therefore, can be effectuated by our ruling in the abstract on the sensitive and delicate question of the separation of powers between executive (district attorney), judicial (grand jury), and legislative (privilege of aides against testifying) branches of government. United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Doe v. McMillan, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); Gravel v. United States, 408 U.S. 606, 92 S.Ct. 2614, 33 L. Ed.2d 583 (1972). The difficulty of making a determinative or useful ruling, moreover, is compounded by the absence of concrete question specifically illustrating the type of information sought from Baer and the factual circumstances by which he learned it. Any attempt by this court to enunciate principle in this shadowy area of constitutional law would be in the nature of an abstract advisory opinion rather than an actual adjudication of a controverted issue.
This court will not ordinarily rule upon abstract questions where no practical results can be effectuated by its ruling. Verdun v. Scallan Brothers Contractors, 263 La. 1073, 270 So.2d 512 (1972); Navarre v. Lafayette Parish School Board, 226 La. 876, 77 So.2d 520 (1955); Edwards v. Hayes, 203 La. 433, 14 So.2d 48 (1943).
For the reasons assigned, therefore, the subpoena and the ruling modifying it are both annulled and set aside, and the supervisory writs issued in connection with the present proceeding are rescinded and recalled, and the relator's application is dismissed.
SUMMERS, J., dissents and will assign reasons.
SUMMERS, Justice (dissenting).
The per curiam issued by the Court decrees that the subpoena and the ruling modifying it are both annulled and set aside, and the supervisory writs issued in connection with the present proceeding are rescinded and recalled. The per curiam does not define the issue presented for decision. That issue is whether a grand jury can subpoena a legislative aide to testify and disclose the identity of confidential informants who gave information to a legislative committee.
*539 The issue is not moot nor is the issue academic or "abstract". The confidential informant has given information to the committee, and the grand jury may again subpoena the aide to testify. The fact that "All information possessed by Baer (except the names of confidential informants) has been made available to the district attorney" does not render the issue moot or academic. Disclosure of the names of confidential informants is the issue. It is the reason why this case is before this Court. The fact that the committee has turned over all other information to the district attorney, therefore, is irrelevant and immaterial.
If by annulling and setting aside the subpoena the Court means to say that a grand jury cannot subpoena the aide under these circumstances, I must dissent. And, likewise, if by annulling and setting aside the trial judge ruling limiting the scope of the testimony Baer may be compelled to give before the grand jury, the Court intends to say that Baer must reveal the names of confidential informants, I must again dissent.
With respect to the right of the grand jury to subpoena Baer, there can be no serious question. The right to subpoena does exist. The scope of the testimony Baer may be compelled to give, on the other hand, was and remains a viable issue of constitutional significance.
As I read the per curiam, it has the effect of disapproving the ruling of the trial judge. That ruling denied the grand jury the right to compel the disclosure of the identity of confidential informants. Thus, without assigning reasons for its decree, in effect, the Court has decided the important constitutional issue that a legislative aide may be compelled to disclose to a grand jury the identity of confidential informants giving information to a legislative committee. For this reason I find it necessary to assign reasons for my dissent.
The Louisiana Stadium and Exposition District was created by constitutional amendment adopted in 1966. La.Const. Art. XIV, § 47. The Amendment provides that the District is to be governed by a Board of Commissioners. Id. § 47(B). Its purpose was to plan, finance, construct, maintain and operate facilities to accommodate the holding of sports events, athletic contests and other events of public interest. Id. § 47(C). By the Amendment the Legislature is authorized to more fully define the rights and obligations of the District or otherwise legislate to any extent with regard to the District, its governing body and its powers, duties and functions. Id. § 47(T). In keeping with this authority, the District was activated, and a "domed stadium" (Superdome) is under construction in the city of New Orleans.
In 1971 the Legislature adopted a resolution ordering the Board of Commissioners of the District "to limit the total aggregate principal amount of bonds" issued to finance the project "to an amount not in excess of $129,500,000."
Senate Concurrent Resolution No. 14 of the 1973 Extra Session of the Legislature created a joint legislative committee to investigate "all aspects of the domed stadium", for, according to the resolution, "more than $8,000,000 additional moneys would be needed to complete the Superdome." The committee thus created was vested with full power and authority inherent in the Legislature and conferred by law to take testimony at hearings. Past legislation was under scrutiny by the Committee, while forthcoming legislation was to be predicated upon information obtained by the Committee. The Legislature charged that the Committee should
"... undertake an immediate comprehensive, in-depth investigation, inquiry and hearings into all aspects of the domed stadium project ... including but not limited to the total costs of and estimated cost overruns in the project, feasibility of refinancing the District's bonds management of the domed stadium project, contracts and subcontracts relating to the domed stadium *540 project, and any and all matters related to any of the foregoing ...."
Authority was also granted the Committee to employ counsel, investigators and other personnel to accomplish its purpose. Once the investigation was completed, the Committee was directed "... to make a report of its findings and recommendations to the Legislature and the Governor at such time or times as its (sic) deems necessary and proper."
While the investigation was in progress on August 28, 1974 Michael Baer, a staff aide to the Committee, made pronouncements to the media and press that members of the staff of the Board of Commissionersto whom he referred as the Dome Stadium Commissionwere under allegations of criminal activity before the Committee. Whereupon the District Attorney for the Parish of Orleans, acting under the authority of Article 66 of the Code of Criminal Procedure caused a subpoena duces tecum to be issued to Michael Baer to appear and produce before the District Attorney copies of all records in his possession as a result of the investigation conducted by the Committee concerning the Dome Stadium Commission.
Shortly thereafter, on September 3, 1974 the Committee adopted a resolution wherein it invoked "its legislative privilege as provided under Louisiana and federal law... for its staff relative to records and other evidence obtained in its investigation...."
Baer appeared in response to the subpoena but was not required to testify, the trial judge being of the opinion that Article 66 only required that he appear in response to subpoena, not that he be compelled to testify. Application to this Court for certiorari to review the ruling was denied. 299 So.2d 804.
Ostensibly acting upon the advice of the District Attorney, a subpoena then issued on September 30, 1974 from the Orleans Parish grand jury summoning Baer to appear on October 3, 1974 to testify "in such matters as may be required." Thereupon the Committee filed a motion to have the grand jury subpoena modified to limit the questioning of Baer to exclude from inquiry all information obtained by him as a staff member of the Committee. Unless the subpoena was so modified, the motion alleged, the questioning by the grand jury could involve matters which were privileged to the Legislature, its committees, the committee members and its staff.
In a hearing held in connection with this motion, it was revealed that Baer was the only witness called by the grand jury. And it was shown that Baer was an aide to the Committee, and in that capacity he knew the identity of confidential informants and the information they supplied to Senator Nat Kiefer, Chairman of the Committee, under whose supervision Baer performed his duties. At the hearing it became apparent that the office of the District Attorney was seeking information as to the identity of confidential informants information obtained by Baer as an aide to the Committee.
Finding that a legislative privilege was recognized by law and that it applied to all information obtained by Baer in his official capacity as a staff member of the Committee, the trial judge modified the subpoena "excluding any and all information obtained by Mr. Baer in his official capacity as a staff member of the Joint Legislative Committee investigating the Domed Stadium Commission ...." From this ruling the District Attorney applied to this Court for review. The writs were granted, and the case has been resolved by a per curiam.
In the meantime, the Committee has completed its investigation. Its records and exhibits, save the names of informants, have been and are being made available to the District Attorney, the Louisiana Attorney General's office and the United States Attorney's office.
*541 The issue thus presented is a conflict between the judicial and executive branches of the governmenta situation where a grand jury has subpoenaed a staff member of a legislative committee to question him concerning any and all information which he may have obtained in his official capacity as an aid to that committee. Conflicts of this nature involving the powers of one of the three branches of the government opposed to another involve tensions. The subject is by its nature a delicate one. No decisions on the question before us have heretofore been recorded in this State. It is not an issue to be resolved by the offhand fashion adopted by the Court.
The privilege invoked by the Committee is granted to United States Congressmen by the federal constitution which declares: "They shall ... be privileged... for any Speech or Debate in either House, they shall not be questioned in any other Place." U.S.Const. Art. I, Sec. 6. Louisiana's Constitution of 1921, under which this case falls, accords an almost identical privilege to members of the Legislature who are made "privileged ... for any speech or debate in either house they shall not be questioned in any other place." La.Const. art. III, § 13.
Because of the similarity of these Speech or Debate provisions of the Federal and State constitutions, and the absence of decisions on this question by our Court, it is appropriate to refer to decisions by the federal courts on the federal constitutional provision for guidance.
In the formation of our tripartite system of government, establishing three separate and co-equal branches the executive, legislative and judicial, the authors of Louisiana's Constitution were guided by the principles which underlie the Constitution of the United States. Fundamental to the division in the Government's structure were Madison's observations in the Federalist No. 48:
"It is agreed on all sides, that the powers properly belonging to one of the departments, ought not to be directly and completely administered by either of the other departments. It is equally evident, that neither of them ought to possess directly or indirectly, an overruling influence over the others in the administration of their respective powers. It will not be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it. After discriminating therefore in theory, the several classes of power, as they may in their nature be legislative, executive or judiciary; the next and most difficult task, is to provide some practical security for each against the invasion of the others. What this security ought to be is the great problem to be solved." (Cooke ed.)
The legislative privilege embodied in the Speech or Debate Clause protecting against possible prosecution by an unfriendly executive and conviction by a hostile judiciary was said, in United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), to be one manifestation of the "practical security" for ensuring the independence of the legislature.
The clause has its origin in the culmination of a long struggle for parliamentary supremacy arising from the conflict between the commons and the Tudor and Stuart monarchs of England. The privilege was from the inception of American constitutional government considered fundamental. It was a reflection of political principles already firmly established in several States when it was incorporated into the Federal Constitution. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)
It appeared in the Articles of Confederation in these words: "Freedom of speech and debate in Congress shall not be impeached or questioned in any court, or place out of Congress ...." The present clause is only a slight modification, and is, in turn, almost identical to the English Bill of Rights of 1689. See United *542 States v. Johnson, supra; Tenney v. Brandhove, supra.
So well recognized is the privilege in this State that it has not been called into question before. It is considered indispensable to enable and encourage the representatives of the people to discharge their public trust with the fullest liberty and freedom of deliberation and expression. Only by this privilege are they protected from the consequences of retaliation by those who are offended by the exercise of that liberty. The privilege should therefore be broadly construed to effectuate that purpose. Authorities have recognized that it should not be confined to the giving of an opinion or uttering a speech or haranguing in debate; but it should be extended to the giving of a vote, to the making of a written report, and to those other functions of that office. Tenney v. Brandhove, supra; Coffin v. Coffin, 4 Mass. 1 (1808); Cf. II Works of James Wilson 38 (Andrews ed. 1896).
"It is true that the Clause itself mentions only `Senators and Representatives,' but prior cases have plainly not taken a literalistic approach in applying the privilege. The Clause also speaks only of `Speech or Debate,' but the Court's consistent approach has been that to confine the protection of the Speech or Debate Clause to words spoken in debate would be an unacceptably narrow view. Committee reports, resolutions, and the act of voting are equally covered; `[i]n short, ... things generally done in a session of the House by one of its members in relation to the business before it.' Kilbourn v. Thompson, 103 U.S. 168, 204, 26 L.Ed. 377 [391] (1881), quoted with approval in United States v. Johnson, 383 U.S., at 179, 86 S.Ct., at 755 [15 L.Ed.2d, at 687]. Rather than giving the Clause a cramped construction, the Court has sought to implement its fundamental purpose of freeing the legislator from executive and judicial oversight that realistically threaten to control his conduct as a legislator." Gravel v. United States, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972).

I
The District Attorney contends that the Speech or Debate Clause applies only to members of the Legislature, and Michael Baer an aide to a legislative committee and the legislative committee have no valid claim to constitutional immunity from grand jury inquiry. The position is untenable. For the purpose of construing the privilege, a Member and his aide are to be treated as one. A legislative committee is likewise entitled to the privilege. Otherwise the privilege would be rendered meaningless and the legislative function greatly impaired. Inquiry is therefore prohibited into things done by Baer in the Committee hearings as the Senator's agent or assistant which would have been legislative acts, and therefore privileged, if performed by the Senator. Gravel v. United States, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972).
It is literally impossible, in view of the complexities of the modern legislative process, with the protracted sessions, numerous committees and matters of legislative concern constantly proliferating, for Members of the Legislature to perform their tasks without committee hearings and the help of aides and assistants. Committee hearings are but an extension of the legislative process. And the day-to-day work of aides is so critical to the performance of legislative functions that they must be treated as the alter ego of the Members. If they are not so recognized, the central role of the Speech or Debate Clauseto prevent intimidation of legislators by the executive and accountability before a possible hostile judiciarywill inevitably be eroded and frustrated. United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L. Ed.2d 681 (1966); Barr v. Matteo, 360 U. S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).
*543 No abuses are foreseen because legislators are invested with the power to relieve others from the operation of otherwise valid civil and criminal laws. The privilege applicable to the aide is to be viewed as the privilege of the Senator, and invocable only by the Senator or by the aid on the Senator's behalf, and then only when the privilege is confined to those services that would be immune legislative conduct if performed by the Senator himself. Thus, I do not intend to say that Baer is for all purposes exempt from grand jury questioning.

II
The suggestion has been made that although Baer is entitled to the privilege of the Speech or Debate Clause as an aide, he has not been questioned and there is no justiciable question before the Court.
The demands of and the resistance to the subpoena present an obvious controversy in the ordinary sense, but that alone is not sufficient to meet constitutional standards. In the constitutional sense, controversy means more than disagreement and conflict; it means the kind of controversy courts traditionally resolve. Here at issue is the question whether the grand jury the judiciarymay compel a legislative aide to reveal the names of confidential informants and, perhaps, other information obtained by him in his capacity as an aide in connection with legislative committee hearings. The District Attorney strongly contends for the information, and the Legislature invokes its constitutional privilege in opposition. Whatever the correct answer on the merits, these issues are of a type which are traditionally justiciable. United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).
I am convinced that the issue is properly before us notwithstanding that no specific question has been propounded to Baer which he has refused to answer because of the privilege claimed on his behalf by the Committee. To satisfy the requirement that a question be asked, that Baer refuse to answer it and be held in contempt for the refusal before the matter is reviewable by this Court, is peculiarly inappropriate due to the unique setting in which the question arises.
To require a Member of the Legislature, or his alter ego, to place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling would be unseemly, and present an unnecessary occasion for constitutional confrontation between two branches of the Government. Similarly, a judge should not be placed in the posture of issuing a citation to a Legislator, or the Executive, simply in order to invoke review. United States v. Nixon, supra. Review of each question and ruling would also prolong the litigation interminably. These considerations lead me to believe that the ruling of the trial judge was a reviewable order under this Court's supervisory jurisdiction.

III
As to the question of the identity of confidential informants, which I understand is the principal information sought, the issue is clear. As to other information, however, I do not find that the District Attorney has made a proper showing to overcome the privilege asserted by the Legislature. A presumptive privilege exists when the Legislature asserts its rights under the Speech or Debate Clause. To overcome this presumption there must be a demonstration of need sufficiently compelling to warrant judicial examination in camera of the need for the invasion of the presumptive privilege. To carry this burden the prosecutor must at least show relevancy, admissibility and specificity of the evidence *544 sought by way of the grand jury subpoena. He made no showing, except to establish that the legislative aide had announced that members of the Dome Stadium Commission were being investigated for criminal conduct. A fishing expedition is not a valid basis for questioning a legislative aide concerning information obtained in a legislative committee hearing. In this respect, the trial judge properly limited the inquiry.
The right of the District Attorney to obtain the identity of confidential informants from Baer must also be denied. This Committee was formed to undertake an in-depth investigation, and inquiry into all aspects of the domed stadium project. As such it was an "investigative agency" of the State within the contemplation of the Public Records Act (La.R.S. 44:1-41). Under Section 3 of that Act, "Records containing the identity of a confidential source of information or records which would tend to reveal the identity of a confidential source of information ..." are privileged from disclosure. Information other than records, such as the identity of the confidential informant, is likewise entitled to the privilege under the Speech or Debate Clause in the absence of a showing that the information was not obtained by the Legislator as part of a true legislative function performed in the Committee and within the scope of the Committee's authority. No such showing has been made here.
For this Court to rule that the names of informants must be released to the grand jury, it would be necessary to find such a revelation was not about, and would not impugn, a legislative act. The facts of this case will not warrant such a holding. Gravel v. United States, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972).
I would uphold the ruling of the trial judge.