865 So.2d 932 (2004)
Steve PRATOR, Sheriff of Caddo Parish, Louisiana, Plaintiff-Appellee,
v.
CADDO PARISH, Defendant-Appellant.
No. 38,085-CA.
Court of Appeal of Louisiana, Second Circuit.
January 28, 2004.
Rehearing Denied February 26, 2004.
*933 Office of the Parish Attorney, Parish of Caddo by Charles C. Grubb, Parish Attorney by Alex J. Washington, Assistant Parish Attorney, for Appellant.
Wiener, Weiss & Madison by John M. Madison, Jr., Mark L. Hornsby, Shreveport, for Appellee.
Before CARAWAY, MOORE and LOLLEY, JJ.
LOLLEY, J.
Caddo Parish, Louisiana ("Caddo Parish") appeals a declaratory judgment by the First Judicial District Court, in favor of Steve Prator, Sheriff of Caddo Parish, Louisiana ("Sheriff Prator" or "CPSO"). For the following reasons, the portion of the judgment granting declaratory relief is reversed, and that portion of the judgment *934 denying appellant's reconventional demand is affirmed.

FACTS
This lawsuit arises from a dispute between Caddo Parish and Sheriff Prator over funding obligations at Caddo Correctional Center ("CCC"). Caddo Parish owns CCC and Sheriff Prator is the keeper of CCC and has the obligation to operate the facility. See, La. R.S. 15:704.
Caddo Parish constructed CCC in the mid-1990's before sufficient funding to operate the facility was procured. Sheriff Prator's predecessor sought and obtained a one-fourth cent sales and use tax for the specific purpose of operating CCC. Additionally, a one-tenth cent sales and use tax was approved taking effect on January 1, 2003. This one-tenth cent sales and use tax was levied to provide supplemental funding for the salaries, pensions, and benefits of Deputy Sheriffs for the CPSO, i.e., it was dedicated to a separate purpose than that of the one-fourth cent sales and use tax and is presently being utilized by Sheriff Prator.
For accounting purposes, the sheriff's office is divided into two funds: (1) the General Fund and (2) the CCC Fund. The primary source of funds for the General Fund is a 14.93 mill property tax. In addition to the one-fourth cent sales and use tax, the primary source of funds for the CCC Fund, is as follows: (1) revenue generated at CCC; (2) per diem payments for state, federal and other non-parish prisoners; (3) per diem payments of not less than $3.50 pursuant to La. R.S. 33:1432 by Caddo Parish for parish inmates; and (4) other operating expenses paid by Caddo Parish for maintenance and equipment for CCC. Both funds benefit from the one-tenth cent sales and use tax dedicated to deputy salaries which Sheriff Prator began collecting on January 1, 2003.
On October 25, 2001, the Parish Administrator for Caddo Parish, William T. Hanna, Jr., met with Sheriff Prator and advised him that "pursuant to a recently discovered statutory law," he believed that Caddo Parish was entitled to a credit for payments it made to the sheriff's office for fixed expenses attributable to the keeping of state prisoners at CCC. These expenses amounted to approximately $600,000 annually. The "statutory law" relied upon by Caddo Parish is La. R.S. 15:824(B)(1)(a) and (B)(2), which provides that when a state prisoner is housed in a parish jail, and the Department of Corrections pays the sheriff $22.39 per day for "keeping and feeding" that state prisoner, then "no additional compensation from the parish governing authority shall be paid to the sheriff for the care of those prisoners being held for the department...."
Caddo Parish interpreted this statute to give it the authority to deduct from its payments to CPSO a percentage of certain fixed expenses from CCC based on the average number of non-parish inmates housed at CCC (approximately 25%). Although Caddo Parish did not question its obligation to fund some of CPSO's expenses, such as the rent for the sheriff's offices, no agreement was reached on other expenses in question, nor on Caddo Parish's demand for a reimbursement credit it claims it is due from CPSO. Because the parties could not agree on a common interpretation of the applicable statutes, the sheriff's office filed a lawsuit for declaratory judgment and Caddo Parish reconvened with an action for declaratory judgment.
At the trial of the matter, Sheriff Prator introduced evidence indicating that the expenditures in the CCC Fund, according to his office's accounting techniques, exceeded *935 the revenues it generated. The sheriff contended that if Caddo Parish were to prevail in these proceedings it would not be adhering to its statutory responsibilities to fund CCC.
Caddo Parish argued that the evidence presented by CPSO to substantiate this claim was manufactured. As a basis for this assertion, it maintained that the posture taken by CPSO to account for its bailiffs was misplaced. Caddo Parish contended that the bailiffs have no bearing on the operational issues of CCC as none of the bailiffs report to work at CCC according to the job description of bailiffs entered into evidence. The difference of accounting opinion stems from the fact that the expenses of the bailiffs were taken out of the CPSO's General Fund sometime in February 2002 and were transferred from the General Fund to the CCC Fund after half of the fiscal year of 2002 had elapsed. It is contended by Caddo Parish that the CPSO then made accounting adjustments to shift all expenses pertaining to the bailiffs from the General Fund to the CCC Fund retroactive to July 1, 2001. The complaint of Caddo Parish is that when this occurred, the CPSO did not, however, transfer revenues generated by the bailiffs to counterbalance the situation and that those revenues continue to be revenues of the General Fund of the CPSO. Caddo Parish further contended that regardless of the existence of CCC, the sheriff's office would still need the same number of bailiffs for their courtroom duties and, therefore, the funding should come from the sheriff's General Fund budget. Furthermore, the parish contended that due to the transfer of expenses into the CCC Fund retroactive to July 1, 2001, the CCC Fund showed a deficit.
A subsequent issue raised at trial was whether Caddo Parish is obligated to fund the sheriff's Training Academy. The training academy is not only used by the CPSO, but is also open to other law enforcement agencies, on a fee basis, for specified training for their officers and/or deputies. It is assumed that the primary goal is to gain post certification for the participating officers and/or deputies.
Prior to trial, the parties entered into a joint stipulation that the Parish would "provide space and/or pay rent, heat and illumination expenses for all offices and substations of the sheriff to perform his functions as Chief Law Enforcement Officer of Caddo Parish." At trial, the CPSO raised the issue of funding the sheriff's Training Academy specifically for the first time. The trial court allowed evidence to be heard on the issue of the Training Academy over the objection of Caddo Parish who argued that the introduction of such evidence expanded the sheriff's petition. Sheriff Prator took the position that the Training Academy issue fell within the general intent of La. R.S. 33:4713, which in pertinent part states that:
Each parish shall provide and bear the expense of a suitable building and requisite furniture for the sitting of the district and circuit courts and such offices, furniture and equipment as may be needed by the clerks and recorders of the parish for the proper conduct of their offices and shall provide such other offices as may be needed by the sheriffs of these courts and by the tax collectors and assessors of the parish and shall provide the necessary heat and illumination thereof.
Caddo Parish argued that the parties had already resolved the issue of its responsibility to provide space and/or pay rent, heat and illumination expenses for the Sheriff's Office within the context of a joint stipulation. It therefore maintained that CPSO should be precluded from raising that issue at trial. Caddo Parish further *936 contended that the Training Academy is outside the definition of "offices" under the pertinent language of La. R.S. 33:4713. Finally, Caddo Parish argued that the Training Academy is self-sufficient due to the fact that the facility is used by numerous paying agencies outside Caddo Parish.
The trial court issued a judgment rejecting Sheriff Prator's request for declaratory judgment on certain issues where it found there was no controversy between the CPSO and Caddo Parish. This portion of the judgment is not on appeal. The trial court granted in part other requests for declaratory judgment prayed for by Sheriff Prator and rejected the requests for declaratory judgment prayed for by Caddo Parish in its reconventional demand. This appeal by Caddo Parish ensued.

RELEVANT STATUTES
The following is a summary of the relevant laws establishing the statutory duties of the Sheriff's Office and the financial responsibilities of Caddo Parish for funding:
 Citation Summary
 15:304 Parish responsible for "all expenses incurred ... by the arrest, confinement
 and prosecution of persons accused or convicted of crimes...."
 15:702 The governing authority of each parish "shall be responsible for the physical
 maintenance of all parish jails and prisons...."
 15:704 Designates each sheriff as the keeper of the public jail, and directs that he
 "shall by all lawful means preserve the peace and apprehend all disturbers
 thereof...."
 15:705(A) Requires a sheriff to provide each prisoner with wholesome and sufficient food,
 and also adequate clothing.
 15:824(B) Provides for reimbursement by the State to a sheriff for the "keeping and
 feeding of prisoners in jail the sum of twenty-two dollars and thirty-nine cents
 per day...."
 33:1432(1) Requires a parish to pay a sheriff not less than $3.50 per day as a fee "for
 keeping and feeding of prisoners in jail...."
 33:4713 Requires a parish to provide a sheriff "such other offices as may be needed by
 the sheriffs," as well as "the necessary heat and illumination therefor."
 33:4715 Requires a police jury to provide "a good and sufficient jail."
The following is a summary of the applicable statutes codified at La. R.S. 33:9001-11, which empowers the sheriff to raise revenues to finance his facilities and services through the creation of a continuing legal entity in each parish known as a law enforcement district, whose corporate existence survives the term of office of any individual sheriff.
 Citation Summary
 33:9001 Creates a law enforcement district in each parish "for the purpose of
 providing financing to the office of sheriff for that parish...."
 33:9003(A) Except in Orleans Parish, establishes without voter approval a basic
 millage to fund the district, limited in amount to commissions on tax
 collections previously collected by the sheriff.
*937
 33:9003(B)(C) Authorizes a sheriff to call elections seeking voter approval of levies by the
 district of additional ad valorem taxes or sales taxes.
 33:9004(B) Authorizes districts to enter into binding contracts for a duration beyond
 the term of office of the incumbent sheriff.
 33:9008 Provides that creation of such districts shall not "be interpreted as
 diminishing any of the authority of the sheriff...."
 33:9010 Authorizes districts to issue bonds for a term of up to thirty years secured
 by their full faith and credit, or by a pledge of their revenues, to finance
 immovable or movable property "of use or benefit" to the sheriff. (See
 subsection C(1)).[1]
DISCUSSION
On appeal, Caddo Parish lists five assignments of error, one of which addresses the CPSO's training facility and the other four relating to our discussion of the issue of justiciable controversy.

Training Academy
In the third assignment of error, Caddo Parish argues that the trial court erred in admitting evidence concerning the sheriff's Training Academy and finding that it falls within the requirements of La. R.S. 33:4713. It is this court's opinion that the term "offices" does not denote a training facility. Furthermore, we find that the issue of the parish's financial responsibility to furnish the sheriff with "offices" was resolved in the joint stipulation of the parties and, therefore, was not properly before the trial court.
A stipulation has the effect of binding all the parties and the court. Dolsen v. City of New Orleans, 559 So.2d 50 (La.App. 4th Cir.1990), citing, R.J. D'Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600, 601 (La.1983), cert. denied, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984). A trial court is bound to render judgment in accordance with the stipulations of the parties where the stipulations were not in derogation of the law. General Investment, Inc. v. Thomas, 400 So.2d 1081 (La.App. 4th Cir.1981), writ denied, 401 So.2d 353 (La.1981). In Wickliffe v. Cooper & Sperrier, 161 La. 417, 108 So. 791 (1926), the Louisiana Supreme Court determined that stipulations between the parties in a specific case were binding upon the trial court in the disposition of that case, where the stipulations were not in derogation of the law. Johnson v. T & LNAS/Domino Sugar, XXXX-XXXX (La.App. 4th Cir.08/20/03), 854 So.2d 985, writ denied, 2003-2648 (La.12/12/03), 860 So.2d 1160. Stipulations have the effect of judicial confessions. R.J. D'Hemecourt Petroleum, supra. A judicial confession is indivisible and may be revoked only on the ground of error of fact. La. C.C. art. 1853; Mollere v. Creole Engineering Sales Co., 570 So.2d 212 (La.App. 5th Cir.1990), writ denied, 575 So.2d 371 (La.1991); Brockman v. Salt Lake Farm Partnership, 33,938 (La.App.2d Cir.10/04/00), 768 So.2d 836, writ denied, XXXX-XXXX (La.12/15/00), 777 So.2d 1234.
For the reasons assigned above, we find that the trial court was in error in hearing evidence regarding the Training Academy and therefore, we reverse that part of the trial court's judgment.

*938 Justiciable Controversy

Before giving any specific consideration to the remaining assignments of error brought by Caddo Parish, we must first consider whether a justiciable controversy was properly before the trial court. It is the finding of this court that it was not.
Trial courts are vested with wide discretion in deciding whether to grant or refuse declaratory relief. Louisiana Supreme Court Committee on Bar Admissions ex rel. Webb v. Roberts, 2000-2517 (La.02/21/01), 779 So.2d 726, Liberto v. Rapides Parish Police Jury, 1995-456 (La. App. 3rd Cir.11/02/95), 667 So.2d 552, 555. For a declaratory judgment to be granted, there must be a justiciable controversy, as courts are not permitted to issue advisory opinions based on a contingency which may or may not occur. Couvillion v. James Pest Control, Inc., 1998-2382 (La. App. 4th Cir.03/03/99), 729 So.2d 172, 174.
The Louisiana Supreme Court has defined a justiciable controversy as follows:
... an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of a conclusive character.
Jordan v. Louisiana Gaming Control Board, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX (La.05/15/98), 712 So.2d 74, 85 (quoting from Abbott v. Parker, 259 La. 279, 308, 249 So.2d 908, 918 (La.1971)).
Courts should not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. Louisiana Supreme Court Committee on Bar Admissions ex rel. Webb, supra, (citations omitted). We recognize the "long-standing principle that our courts are without jurisdiction to issue or review advisory opinions and may only review matters that are justiciable." Duplantis v. Louisiana Board of Ethics, XXXX-XXXX, XXXX-XXXX, (La.03/23/01), 782 So.2d 582, 589.
The supreme court has instructed the lower courts to refrain from rendering declaratory judgments when the issue presented to the court is academic, theoretical, or based on a contingency which may not arise. Reily v. State of Louisiana, 2003-580 (La. App 3d. Cir.12/17/03), 864 So.2d 223, Louisiana Supreme Court Committee on Bar Admissions ex rel. Webb, supra; Jordan, supra.
Without doubt, for a trial court to entertain an action for declaratory relief, there must be a justiciable controversy and the question presented must be real and not theoretical. American Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158, 162 (La. 1993) Tugwell v. Members of Bd. of Hwys., 228 La. 662, 83 So.2d 893 (1955). Courts are not empowered to render advisory opinions on moot or abstract issues of law. Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697 (La.1993); St. Charles Parish School Bd. v. GAF Corp., 512 So.2d 1165 (La.1987); In re Baer, 310 So.2d 537 (La.1975); State v. Board of Supervisors, 228 La. 951, 84 So.2d 597 (1955); Abbott, supra; Comment, Advisory Opinions and the Requisites of Justiciability in Louisiana Courts, 35 La. L.Rev. 898, 900 (1975).
Consequently, a declaratory action cannot generally be maintained unless it involves some specific adversary question or controversy asserted by interested parties and based on existing state of facts. Tugwell v. Members of Bd. of Hwys., supra. Thus cases submitted for adjudication *939 must be justiciable, ripe for decision, and not brought prematurely. St. Charles Parish School Bd., supra.

Caddo Parish's Assignment of Error No. 1:
In its first assignment of error, Caddo Parish contends the trial court erred in determining that it was obligated to pay all expenses of feeding and clothing the inmates at CCC, including costs of food preparation and laundry. The evidence bears out that the present arrangement between the two parties has more than sufficiently funded the expenses of CCC. Moreover, the evidence does not show that Caddo Parish has failed thus far in its duty to fulfill its financial obligation as mandated by the pertinent statutes.[2] Therefore, it is clear that the issue of whether or not Caddo Parish should pay for food preparation and laundry for the inmates, is premature, or at best a contingency that has not yet arisen in this case. We therefore reverse this portion of the trial court's judgment and find that there is no justiciable controversy on this point.

Caddo Parish's Assignment of Error No. 2:
In this assignment of error, Caddo Parish argues that the trial court erred in finding there was a factual or legal basis for making it "responsible for the pay of witnesses, including deputies to the extent the same does not duplicate their salary." There is no evidence that Caddo Parish failed to pay for any witnesses pursuant to its obligation under La. R.S. 15:304. Without a failure to act by the Parish, there can be no justiciable controversy regarding this issue. We therefore reverse the trial court's declaratory judgment on this issue.

Caddo Parish's Assignments of Error Nos. 4 and 5.
In its last two assignments of error, Caddo Parish contends that it is entitled to a credit for certain costs relative to the housing of out-of-parish inmates and for certain revenues generated at CCC. No evidence was presented that established that Caddo Parish actually deducted the above costs from the funding extended to CCC. This being the case, we find there is not a justiciable controversy regarding these issues, and thus, they were prematurely addressed by the trial court. We therefore reverse this portion of the trial court's decision.
Overall, we note that a careful review of the very complicated issues presented in this case reveals that CPSO is not in a negative financial position and that all of its financial responsibilities are presently being met with the income generated from CCC, the sheriff's tax base and through the continued financial support of Caddo Parish. Clearly, this entire law suit is based on contingencies that have not yet occurred. The evidence reveals that the meeting that precipitated this lawsuit was in and of itself an arena for discussions between two political entities that went askew. We find that Caddo Parish, to date, has not neglected or refused to fulfill its statutory responsibilities to the CPSO. We find that this action for declaratory judgment was premature and therefore was not warranted. We agree with Caddo Parish that these issues are best resolved between the two political entities as was *940 intended under the law. If the political entities ultimately reach the point that they cannot successfully resolve issues between them then, and only then, can such a lawsuit be properly presented to a court for necessary determinations.

CONCLUSION
For the foregoing reasons, we reverse in part and affirm in part the trial court's judgment in this case. Costs of this appeal are assessed equally to the parties.
REVERSED, IN PART; AFFIRMED, IN PART.

APPLICATION FOR REHEARING
Before STEWART, GASKINS, CARAWAY, MOORE and LOLLEY, JJ.
Rehearing denied.
STEWART and GASKINS, JJ., would grant rehearing.
NOTES
[1] Statutory summaries are excerpted from the summations succinctly presented in the Amicus Curiae Brief of the Louisiana Sheriffs' Association.
[2] The evidence is not clear regarding whether Caddo Parish is paying only the $3.50 per diem statutory minimum. If Caddo Parish is obligated to furnish more than the $3.50 per diem statutory minimum, specific financial data should be presented by CPSO establishing the deficiency and evidence of Caddo Parish's refusal to fulfill that obligation so that the amount owed may be calculated and a definitive judgment rendered.