888 So.2d 812 (2004)
Steve PRATOR, Sheriff of Caddo Parish, Louisiana
v.
CADDO PARISH.
No. 2004-C-0794.
Supreme Court of Louisiana.
December 1, 2004.
*813 Wiener, Weiss & Madison, APC, John M. Madison, Jr., Susie Morgan, Michael Allyn Stroud, Mark Lane Hornsby, Shreveport, Counsel for Applicant.
Pugh, Pugh & Pugh, Robert G. Pugh, Shreveport, Charles Carr Grubb, Parish Attorney, Alex James Washington, Jr., Assistant Parish Attorney, Counsel for Respondent.
Usry, Weeks & Matthews, Thomas Allen Usry, John Franklin Weeks, II, New Orleans, Counsel for Amicus Curiae Louisiana Sheriffs' Association.
Dannie P. Garrett, III, Baton Rouge, Roland John Dartez, and William J. Doran, Baton Rouge, Counsel for Amicus Curiae Police Jury Association of Louisiana, Inc.
Patrick Richmond Jackson, Counsel for Amici Curiae Bossier Parish Police Jury and Webster Parish Police Jury.
WEIMER, Justice.
This matter addresses a controversy between a parish government and a sheriff concerning the parish's claim to a credit for certain costs relative to the housing of out-of-parish inmates at the parish jail ("credit issue") and whether the parties' actions for declaratory judgments stated justiciable controversies.
We granted a writ in this matter to determine whether the court of appeal erred in finding a lack of justiciable controversies and dismissing a suit for declaratory judgment by Caddo Parish Sheriff Steve Prator and a responsive reconventional demand by Caddo Parish, which also sought a declaratory judgment. Prator v. Caddo Parish, 38,085 (La.App. 2 Cir. 1/28/04), 865 So.2d 932, writ granted, 04-0794 (La.5/21/04), 874 So.2d 159. Finding the appellate court erred in holding no justiciable controversy as to the credit issue, we vacate that portion of the court of appeal decision. We remand the matter to the court of appeal to address the merits of Caddo Parish's (appellant's) assignment of error regarding its reconventional demand that urges Caddo Parish is entitled to a credit for certain costs relative to the housing of out-of-parish inmates at the Caddo Parish Correctional Center (CCC).

FACTS AND PROCEDURAL HISTORY
The events that triggered this litigation are undisputed. On October 25, 2001, the Parish Administrator for Caddo Parish, William T. Hanna, Jr., and the Parish Attorney, Dannye Malone, met with Sheriff Prator for a discussion of funding for the CCC. Caddo Parish owns the CCC, which was constructed in the mid-1990s; Sheriff Prator is the keeper of the CCC and has the obligation to operate that facility. See, LSA-R.S. 15:704.[1]
For accounting purposes, the sheriff's office is divided into two funds: the general fund and the CCC fund. The latter *814 fund is at the center of this litigation. The CCC fund is comprised of revenues from a one-fourth cent sales and use tax; revenues generated at the CCC; per diem payments by the Louisiana Department of Corrections and others for state, federal and other non-parish prisoners; per diem payments of not less than $3.50 pursuant to LSA-R.S. 33:1432[2] by Caddo Parish for parish inmates; and other operating expenses paid by Caddo Parish for maintenance and equipment for the CCC. Both funds benefit from a one-tenth cent sales and use tax dedicated to deputy salaries that Sheriff Prator began collecting on January 1, 2003.
At the meeting, Hanna advised Sheriff Prator that "pursuant to a recently discovered statutory law," he believed Caddo Parish was entitled to a credit for fixed expenses attributable to the keeping of state prisoners at the CCC against payments the parish makes to the sheriff's office. He calculated these expenses at approximately $600,000 annually. The "statutory law" Hanna cited is LSA-R.S. 15:824(B)(1)(a) and (B)(2)[3].
As the court of appeal acknowledged, Caddo Parish interpreted the provisions of LSA-R.S. 15:824 as giving the parish the authority to deduct from its per diem payments to the sheriff for parish prisoners a percentage of fixed expenses at the CCC based on the average number of non-parish inmates housed at CCC (approximately 25 percent of the inmate population).
At no time between the meeting in October of 2001 and the present has an agreement been reached between Sheriff Prator and Caddo Parish on the "credit issue."
Sheriff Prator responded to the parish's demand concerning the credit issue by filing a petition for declaratory judgment, which petition included numerous allegations of differences over the funding of the CCC in addition to the credit issue.
Caddo Parish answered the sheriff's petition and filed a reconventional demand asserting the credit issue as follows:
The Parish of Caddo appropriates and expends $7,659,000.00 annually for the arrest, confinement and prosecution of *815 individuals accused or convicted of crimes under the provisions of La. R.S. 15:304.[[4]]
....
The Parish of Caddo is entitled to a credit from the Caddo Parish Sheriff for expenses incurred relative to housing DOC, federal and out-of-parish inmates in accordance with state law.
Additionally, Caddo Parish sought a declaratory judgment on the issue of whether it was entitled to a credit for the revenues generated at the CCC from the use and operation of such items as the commissary, telephones, vending machines, and medical expenses for federal inmates.
Trial on the merits was held on April 24, 2003. The court took the matter under advisement and rendered judgment on May 28, 2003. Addressing the merits of the parish's request for declaratory judgment on the credit issue, the trial court denied the request on the ground that "[a]ttempts to impose a share of fixed costs for jails have been soundly rebuffed" in the jurisprudence. The court cited Webre v. Wilson, 95-1281 (La.App. 1 Cir. 4/4/96), 672 So.2d 1124, and City of Shreveport v. Caddo Parish, 27,519 (La.App. 2 Cir. 6/23/95), 658 So.2d 786, writs denied, 95-2285, 95-2298 (La.11/27/95), 663 So.2d 728-729.
Concerning Caddo Parish's request for declaratory judgment that it was entitled to a credit for the self-generated revenues at the CCC, the trial court found that such revenues were used by the sheriff to offset expenses of the jail which would otherwise be borne by taxpayers. The trial court noted the question of how these revenues should be spent was a matter that should be handled by contract between the sheriff and the parish, and denied the parish's request for declaratory judgment.
Caddo Parish appealed. Having prevailed on the two credit issues by the denial of the parish's requests for declaratory judgment, the sheriff did not answer the appeal.
After a discussion of the requirement of a justiciable issue, the appellate court dispensed with the credit issues as follows:
In its last two assignments of error, Caddo Parish contends that it is entitled to a credit for certain costs relative to the housing of out-of-parish inmates and for certain revenues generated at CCC. No evidence was presented that established that Caddo Parish actually deducted the above costs from the funding extended to CCC. This being the case, we find there is not a justiciable controversy regarding these issues, and thus, they were prematurely addressed by the trial court.
Prator, 38,085 at 12-13, 865 So.2d at 939.

DISCUSSION
Our sole concern in granting a writ in the instant case was whether a sufficiently justiciable controversy existed between the sheriff and the parish. Courts are without power to grant declaratory relief unless such a controversy exists. To avoid deciding abstract, hypothetical, or moot questions, courts require cases submitted for adjudication be justiciable, ripe for decision, and not brought *816 prematurely. St. Charles Parish School Board v. GAF Corporation, 512 So.2d 1165, 1171 (La.1987)(on rehearing). "These traditional notions of justiciability are rooted in our constitution's tripartite distribution of powers into the executive, legislative, and judicial branches of government." Perschall v. State, 96-0322, p. 15 (La.7/1/97), 697 So.2d 240, 251. Essential to the exercise of this state's judicial power is the threshold requirement of a dispute, that is, "adverse parties with opposing claims ripe for judicial determination." Id.
The courts of this state, as well as courts across the nation, have grappled with the difficult issue of when a controversy is justiciable as opposed to an abstract question that would result in a merely advisory opinion. Id."The difference between an abstract question and a `controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). We have declined jurisdiction over issues posed in the abstract. We have declined jurisdiction when actions do not involve specific adversarial questions asserted by interested parties based on existing facts. See cases cited in Perschall, 96-0322 at 16-17, 697 So.2d at 252.[5] For example, in Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9, 11 (1964), this court declined to rule on the constitutionality of a statute that authorized parishes, municipalities, and port authorities to engage in various activities aimed at promoting industrial development because the city had not taken any action to implement the statute.
In the instant case, the court of appeal cited several cases for the proposition that courts are not permitted to issue advisory opinions based on a contingency which may or may not occur. This is a correct statement of the law and as applied to the facts of this case was a valid reason for the appellate court's resolution of three of Caddo Parish's assignments of error. Addressing Caddo Parish's Assignment of Error No. 1, the appellate court stated the issue of whether or not Caddo Parish should pay for food preparation and laundry for the inmates was premature, or at best a contingency that had not yet arisen in this case. Likewise, addressing Caddo Parish's Assignment of Error No. 2, the appellate court found there was no evidence that the parish failed to pay for any witnesses pursuant to its statutory obligation to do so. Without a failure to act by Caddo Parish, there could be no justiciable controversy regarding this issue. As Caddo Parish pointed out in its brief to this court, prior to filing suit for declaratory judgment, Sheriff Prator had never indicated he had a problem with the funding provided by the parish for food preparation, laundry for inmates, or payment of witnesses.
Further, Caddo Parish admits in brief to this court that prior to its filing of a reconventional demand, the parish had not made a claim to revenues generated at the CCC by the commissary, telephones, vending machines, and medical expenses for federal prisoners. Thus, Caddo Parish is in agreement with the court of appeal that its Assignment of Error No. 5 is without merit because that portion of its *817 reconventional demand was prematurely addressed by the trial court.
These non-justiciable issues are in contrast to the issue of the parish's claim to a credit against fixed expenses at the CCC for out-of-parish prisoners, which was pled in the sheriff's petition and in the parish's reconventional demand. As previously mentioned, at a meeting with the sheriff instigated by the parish, a claim was made to a credit which would have amounted to a $600,000 reduction in the sheriff's budget. As Sheriff Prator points out in his brief to this court, the dispute over the credit issue is a substantial and actual dispute between the two parties, and one that existed prior to the commencement of this litigation and continued through the rendition of the opinion of the court of appeal. The credit issue questions the legal relations of the two parties who have real, adverse interests; the credit issue is not a question posed in a "friendly suit." The judgment of the trial court denying Caddo Parish's claim to a credit for fixed expenses, if eventually upheld on appeal, will operate in a conclusive and practical manner by barring this substantial reduction in the sheriff's budget. The fact that Caddo Parish has not actually deducted the fixed costs from the funding extended to the CCC, contrary to the finding of the appellate court, does not deprive the dispute of sufficient immediacy and reality so as to bar a declaratory judgment on the basis of lack of a justiciable controversy.
In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. at 274, 61 S.Ct. at 512, the United States Supreme Court found there was an actual controversy between an insurance company and its insured as to coverage and a duty to defend. The court noted that if it were to hold contrariwise, on the ground that the controversy was "yet too remote" in light of other pending litigation in the federal and state courts, the parties might find themselves burdened with conflicting decisions on the issue. Similarly, if we were to hold that an actual deduction from the funding provided by the parish is required before the sheriff can have his rights judicially determined, the sheriff's ability to realistically budget for his operation of the CCC would be severely hampered. The court of appeal was in error in deciding the credit issue was one of several "contingencies that have not yet occurred." Prator, 38,085 at 13, 865 So.2d at 939.
One further observation concerning the credit issue is in order. If we do not vacate the court of appeal's finding of a lack of justiciable controversy, the denial of the parish's reconventional demand would not be res judicata as to the credit issue. Such a result would place the sheriff at the mercy of the parish, wondering if and when the parish would re-assert its right to this credit. Such a result would be contrary to the intent of the declaratory judgment articles and the jurisprudence interpreting same. "The declaratory judgment articles are remedial in nature and must be liberally construed and applied so as to give the procedure full effect within the contours of a justiciable controversy." Perschall, 96-0322 at 18, 697 So.2d at 253. "[A] person is entitled to relief by declaratory judgment when his rights are uncertain or disputed in an immediate and genuine situation and the declaratory judgment will remove the uncertainty or terminate the dispute." Louisiana Associated General Contractors, Inc. v. State, Division of Administration, Office of State Purchasing, 95-2105, p. 7, (La.3/8/96), 669 So.2d 1185, 1191, quoting In Re P.V.W., 424 So.2d 1015, 1020-21 n. 10 (La.1982).

CONCLUSION
For the above reasons, we vacate the court of appeal's decision that there was no *818 justiciable controversy regarding the credit issue. We remand this matter to the court of appeal for an opinion on the merits of the credit issue. We find no error in the court of appeal's disposition of all other issues in this case and affirm.[6]
VACATED IN PART AND REMANDED TO THE COURT OF APPEAL FOR OPINION; AFFIRMED IN PART.
NOTES
[1] Louisiana Revised Statutes 15:704 provides: "Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders."
[2] Louisiana Revised Statutes 33:1432 provides, in pertinent part, that the sheriffs of all parishes except Orleans Parish shall be compensated "[f]or keeping and feeding of prisoners in jail not less than three dollars and fifty cents per diem for each prisoner."
[3] Louisiana Revised Statutes 15:824(B)(1)(a) provides:

In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, or when he is a participant in a Blue Walters Substance Abuse Program by order of a court in lieu of revocation of probation or by the Board of Parole in lieu of revocation of parole, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-two dollars and thirty-nine cents per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department.
Louisiana Revised Statutes 15:824(B)(2) provides:
When the state makes payment in accordance with this Subsection, no additional compensation from the parish governing authority shall be paid to the sheriff for the care of those prisoners being held for the department.
[4] Louisiana Revised Statutes 15:304 provides, in pertinent part:

All expenses incurred in the different parishes of the state ... by the arrest, confinement, and prosecution of persons accused or convicted of crimes, their removal to prison, the pay of witnesses specifically provided for by law, jurors and all prosecutorial expenses whatever attending criminal proceedings shall be paid by the respective parishes in which the offense charged may have been committed.
[5] American Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158 (La.1993); Church Point Wholesale Beverage Co. v. Tarver, 614 So.2d 697 (La.1993); Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9 (1964); Tugwell v. Members of the Board of Highways, 228 La. 662, 83 So.2d 893 (1955)(on rehearing).
[6] In his brief to this court, Sheriff Prator focused on the appellate court's decision regarding lack of justiciable controversy, but also argued the trial court's judgment should have been affirmed in its entirety. The sheriff states: "Because of its determination that there was no justiciable controversy, the court of appeal did not reach the merits of the trial court's determination that the Sheriff is entitled to the declaratory relief set forth in the trial court's judgment.... [I]f this Court opts to consider the merits, then the Sheriff urges that the court of appeal erred by failing to affirm the trial court's judgment." The sheriff's argument is inaccurate in one respect: the court of appeal reached the merits of that part of the trial court judgment holding the operation of the Sheriff of Caddo Parish's Training Academy falls under LSA-R.S. 33:4713, the statute that obligates parishes to fund "offices" needed by the sheriffs and tax collectors. The court of appeal disposed of this issue as follows: "[T]he issue of the parish's financial responsibility to furnish the sheriff with `offices' was resolved in the joint stipulation of the parties and, therefore, was not properly before the trial court." The sheriff did not specifically address this portion of the court of appeal's opinion, thus failing to sufficiently brief an issue in order for this court to consider the issue.