928 So.2d 618 (2006)
J. Robert WOOLEY, in his Capacity as Acting Commissioner of Insurance, State of Louisiana
v.
STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, Honorable Murphy J. Foster, in His Capacity as Governor of Louisiana, Anne Wise, in Her Capacity as Director of the Division of Administrative Law, and Allen Reynolds, in his Capacity as Director of the Department of State Civil Service.
No. 2005 CA 1490.
Court of Appeal of Louisiana, First Circuit.
February 10, 2006.
*619 Barry E. Ward, Baton Rouge, Counsel for Plaintiff/Appellee J. Robert Wooley Commissioner of Insurance State of Louisiana.
*620 William D. Treeby, Wayne J. Lee, Stephen G. Bullock, Sarah H. Barcellona, New Orleans, Counsel for Defendant/Appellant State Farm Fire & Casualty Company.
Before: CARTER, C.J., DOWNING, and GAIDRY, JJ.
GAIDRY, J.
This matter comes to us on remand from the decision of the Louisiana supreme court in Wooley v. State Farm Fire and Casualty Insurance Company, 04-882 (La.1/19/05), 893 So.2d 746. Finding no justiciable controversy as to the remaining issues, we vacate the judgment of the district court declaring the insurance policy form language at issue contrary to law.

FACTS AND PROCEDURAL HISTORY
The factual and procedural background of the present litigation was thoroughly described and discussed in the supreme court's prior decision cited above. By way of summary, in February 1996, State Farm Fire and Casualty Insurance Company (State Farm) submitted a Rental Condominium Unitowners' insurance policy form (the RCU form) to the Commissioner of Insurance (the Commissioner) for his approval pursuant to La. R.S. 22:620. The Commissioner disapproved the form on the grounds that certain of its provisions purportedly did not comply with the Insurance Code. State Farm requested reconsideration of that decision pursuant to La. R.S. 22:1351, but was unsuccessful in obtaining approval of the RCU form.
State Farm then requested an adjudicatory hearing pursuant to the Louisiana Administrative Procedure Act, La. R.S. 49:950, et seq. The hearing was conducted in 1998 by an administrative law judge (ALJ) of the Division of Administrative Law, who issued a decision in favor of State Farm and ordered the Commissioner to approve the RCU form. The Commissioner sought judicial review of the ALJ's decision, but the district court ruled that the Commissioner had no right to judicial review, based upon La. R.S. 49:964(A)(2) and 49:992(B)(3), enacted by Acts 1999, No. 1332. This court affirmed. Brown v. State Farm Fire and Casualty Insurance Company, 00-539 (La.App. 1st Cir.6/22/01), 804 So.2d 41, writ denied, 01-2504 (La.12/7/01), 803 So.2d 37.
The Commissioner then instituted the present litigation against State Farm, the governor, and other executive branch officials, seeking injunctive relief and declaratory judgment declaring Acts 1995, No. 739 and Acts 1999, No. 1332 unconstitutional and the ALJ's decision null.[1] State Farm in response requested the district court to render declaratory judgment on the legal propriety of the RCU form, only in the event it declared the acts unconstitutional. The district court essentially agreed with the entirety of the Commissioner's position including, among other points, that both acts unconstitutionally vested judicial power in executive branch employees, thereby diminishing the inherent power of the judicial branch, and unconstitutionally *621 diminished the Commissioner's constitutional authority, and that Acts 1995, No. 739 unconstitutionally created unauthorized new courts with non-elected judges. The defendants appealed directly to the supreme court, which reversed and vacated the judgment of the district Court in its entirety, with the sole exception of a declaratory judgment finding the contested language of the RCU form contrary to law. The supreme court has remanded that portion of the district court's judgment for our consideration.

ISSUES PRESENTED FOR REVIEW ON REMAND
In its opinion herein, the supreme court intimated, without expressly so holding, that "the Commissioner is not without the prospect of a judicial remedy ... on the proper interpretation of our insurance laws" and "recognized the possibility that [he] might be entitled to a declaratory judgment in a case such as this where the dispute is in a regulatory context, but involves a purely legal question." Wooley at pp. 34, 38, 893 So.2d at 770, 772. (Our emphasis.) The "narrow issue" presented for our review on remand is "whether the Commissioner is entitled to seek declaratory judgment on the issue of whether State Farm's RCU policy form, as submitted, complies with the applicable laws," and, if so, whether the district court's decision on those merits is correct. Id., 04-882 at p. 38, 893 So.2d at 772.[2]

ANALYSIS
A person "whose rights, status, or other legal relations are affected by a statute" may seek the determination of "any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder." La. C.C.P. art. 1872. Declaratory judgment may be rendered "whether or not further relief is or could be claimed." La. C.C.P. art. 1871. The function of a declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done. ANR Pipeline Company v. Louisiana Tax Commission, 01-2594, p. 9 (La.App. 1st Cir.3/20/02), 815 So.2d 178, 185, affirmed and remanded, 02-1479 (La.7/2/03), 851 So.2d 1145. But our jurisprudence has limited the availability of declaratory judgment by holding that "courts will only act in cases of a present, justiciable controversy and will not render merely advisory opinions." Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 701 (La.1993).
The threshold legal issue in our determination of the narrow issue of the Commissioner's right to declaratory relief is whether a justiciable controversy is presented. Indeed, the supreme court has specifically directed us to consider its opinion in Prator v. Caddo Parish, 04-0794 (La.12/1/04), 888 So.2d 812, addressing the subject of justiciable controversies in a declaratory judgment action.
Because of the almost infinite variety of factual scenarios with which courts may be presented, a precise definition of a *622 justiciable controversy is neither practicable nor desirable. See Prator, 04-0794 at p. 6, 888 So.2d at 816, citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). However, a justiciable controversy has been broadly defined as one involving "adverse parties with opposing claims ripe for judicial determination," involving "specific adversarial questions asserted by interested parties based on existing facts." Id. A justiciable controversy for purposes of declaratory judgment is one involving uncertain or disputed rights in "an immediate and genuine situation," and must be a "substantial and actual dispute" as to the legal relations of "parties who have real, adverse interests." Id. at pp. 7-9, 888 So.2d at 817. It is well settled that courts should not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to such controversies. CITGO Petroleum Co. v. Louisiana Public Service Commission, 04-0914, p. 12 (La.3/2/05), 898 So.2d 291, 298.
As our supreme court has aptly observed, "[t]hese traditional notions of justiciability are rooted in our constitution's tripartite distribution of powers into the executive, legislative, and judicial branches of government." Perschall v. State, 96-0322, p. 15 (La.7/1/97), 697 So.2d 240, 251. By enacting Acts 1999, No. 1332, "[t]he legislature has chosen to deny the right of judicial review to one executive branch office when another executive branch office has ruled against it." Wooley, 04-882 at p. 33, 893 So.2d at 769. (Our emphasis.) More specifically, the supreme court in the present case further observed:
Essentially, the legislature has chosen to allow the ALJs to adjudicate, and in some cases to finally adjudicate, various matters concerning the insurance industry in this state and to reduce the Commissioner's ability to regulate insurance by prohibiting him from overriding the ALJs [sic] decision or order and from seeking judicial review of an adverse decision or order.
Id., 04-882 at p. 33, 893 So.2d at 769-70.
As originally enacted by Acts 1995, No. 739, La. R.S. 49:992(B)(2) provided:
In an adjudication commenced by the division, the administrative law judge shall issue the final decision or order, whether or not on rehearing, and the agency shall have no authority to override such decision or order.
In its opinion herein, the supreme court interpreted the above language as "evidenc[ing] a clear intent to make the Commissioner's decision subordinate to that of the ALJ." Id., 04-882 at p. 30, 893 So.2d at 767.
Subsequent to the supreme court's rendition of its opinion in this matter, the legislature enacted Acts 2005, No. 204, amending La. R.S. 49:992(B)(2) by adding the following significant language: "Upon the issuance of such a final decision or order, the agency or any official thereof shall comply fully with the final order or decision of the administrative law judge." The act was effective August 15, 2005. Our review of both its substantive language and legislative history convinces us that the act was both interpretive and remedial in purpose, and thus should be given retroactive effect.
Adjudications relating to the approval of insurance policy forms are not "civil matters" within the meaning of Article 5, § 16(A) of the Louisiana Constitution, and thus not within the original jurisdiction of the district courts. Wooley, 04-882 at p. 26, 893 So.2d at 765. On the other hand, nothing in the language of La. R.S. 22:620 and 22:621 suggests that the legislature intended the Commissioner to *623 be the final, definitive arbiter for the interpretation and reconciliation of the Insurance Code and insurance policy language. That role is of course constitutionally assigned to the judiciary. ANR Pipeline Company, 01-2594 at p. 7, 815 So.2d at 183-84.
The controversy at issue is essentially identical to that presented to the ALJ, and relates solely to the administrative disapproval of the RCU form as contrary to law. It presents no issues involving the practical application of the RCU form to a concrete factual situation. By its enactment of La. R.S. 49:964(A)(2) and 49:992(B)(2) and (B)(3), the legislature has unequivocally restricted the Commissioner's authority to seek judicial review of the ALJ's adverse adjudication of the issue presented to him. A finding that this dispute in its present posture involves a justiciable controversy would frustrate the legislative intent of administrative finality of ALJ adjudications by allowing the Commissioner to effectively circumvent the adverse ALJ adjudication, and would render the adjudication process of the Division of Administrative Law meaningless.
The "existing facts" of the present controversy, for our purposes, are simply these: The ALJ made an adjudication that the RCU form met La. R.S. 22:621's requirement of compliance with law, an adjudication which is not subject to judicial review at the request of the Commissioner and with which the Commissioner is now bound by law to comply. A litigant not asserting a substantial existing legal right is without standing to seek a declaratory judgment, and such lack of standing renders any judicial opinion sought an impermissible advisory opinion. See Church Point Wholesale Beverage, 614 So.2d at 701-2. Such is the present position of the Commissioner.[3]
The Commissioner is not without recourse to declaratory judgment in appropriate circumstances, however. For example, in the event of litigation arising from a coverage dispute involving the RCU form, a court might hold the allegedly offending language invalid and unenforceable as contrary to law. Upon the judgment becoming final and definitive, the Commissioner could seek declaratory judgment declaring the RCU form contrary to law and confirming his express right to withdraw the previous approval pursuant to the provisions of La. R.S. 22:620(B) and 22:621(1).[4] Under those facts, a justiciable controversy would indisputably exist. There may be other factual circumstances under which the Commissioner might properly seek a judicial determination of the correctness of an adverse ALJ adjudication on the legality of a policy form, but we decline to speculate as to their nature.
Given the limited context of the dispute at issue and the status and posture of the adverse parties within that context, and viewing the dispute in light of the unambiguous legislative intent, we must conclude that no justiciable controversy exists *624 "based on existing facts." Because of this conclusion, we are precluded from reaching the merits relating to the RCU form. If and when that issue arises in a justiciable controversy, however, there is no question but that the courts of this state will be the final authority in its interpretation, to which the ALJs will of course owe deference "once they [the courts] rule on the issue." See Wooley, 04-882 at p. 34, 893 So.2d at 770.
In conclusion, the determinative issue here, as we perceive it, is the absence of a justiciable controversy upon which this court may determine the merits of the legal issue. In the narrow context of the bureaucratic contest from which it arose, the issue of the RCU form's legality is moot. There being no justiciable controversy presented, the district court consequently possessed no power or authority to render its declaratory judgment, and that judgment must be vacated.

DECREE
Accordingly, we vacate the judgment of the district court declaring "that the phrase `this entire policy shall be void' and the phrase `you or any other insured' in lieu of `the insured' as applied to all perils and coverage sections [in the RCU form] is contrary to law, more specifically, LSA-R.S. 22:636.2, LSA-R.S. 22:619E and LSA-R.S. 22:691.2 in that such language is less beneficial to the insured." All costs of this proceeding, in the amount of $870.42, are assessed to the plaintiff-appellee, J. Robert Wooley, Commissioner of Insurance, State of Louisiana.
JUDGMENT OF THE DISTRICT COURT VACATED.
CARTER, J., concurs.
NOTES
[1] Acts 1995, No. 739, effective October 1, 1996 and codified as La. R.S. 49:991-999, created the Division of Administrative Law within the Department of State Civil Service, and provides that all administrative law judges handling adjudications of administrative matters be assigned to and employed by the division. Acts 1999, No. 1332 created La. R.S. 49:964(A)(2) as part of the Louisiana Administrative Procedure Act, and La. R.S. 49:992(B)(3) as part of the statutes relating to the Division of Administrative Law. Both statutes provide that no agency, agency official, or representative of either is entitled to judicial review of a final administrative adjudication.
[2] Parenthetically, we agree with State Farm's observation that the supreme court may have inadvertently erred in assuming that the Commissioner in fact sought declaratory judgment on the merits of the RCU form's compliance with law. Our review of the record reveals that the Commissioner never sought such relief in the district court, and that State Farm requested such relief only in the alternative, in the event the legislative acts at issue were declared unconstitutional. But rather than resolving the present matter on such grounds, we are constrained to resolve it within the parameters set by the supreme court in its judgment remanding the matter.
[3] In concluding that the Commissioner's request for injunctive relief against the ALJ's decision was improper, the supreme court noted that "the Commissioner has not adequately shown on the record how irreparable injury, loss, or damage may occur" to justify injunctive relief. Wooley, 04-882 at pp. 37-8, 893 So.2d at 772. While not determinative on the point, that observation lends support to the conclusion that the residual controversy before us does not concern an "immediate and genuine situation" ripe for judicial determination "based on existing facts."
[4] Louisiana Revised Statutes 22:620(B) provides that the Commissioner "may withdraw any such approval [of a policy form] at any time for cause." Louisiana Revised Statutes 22:621(1) provides that the Commissioner "shall ... withdraw any previous approval [of a policy form] only ... [i]f it is in any respect in violation of or does not comply with law."