KUHN, J.
12Nicholas Lorusso appeals the declaratory decision of the Board of Ethics, functioning as the Supervisory Committee on Campaign Finance Disclosure (the Board), wherein it declared that he was not permitted to amend the report he timely submitted to the Board as required by the Campaign Finance Disclosure Act[1] to reflect that a $30,000.00 payment by him to his campaign for election to the state house of representatives was a loan rather than a contribution. For the reasons that follow, we reverse and render.
FACTUAL AND PROCEDURAL BACKGROUND
Rep. Lorusso was the successful candidate for the Louisiana State House of Representatives, District 94, in an election held on March 10, 2007. On March 1, 2007, candidate Lorusso filed a campaign disclosure report in accordance with La. R.S. 18:1495.4 B(4).[2] Utilizing the form provided by the Board, candidate Lorusso disclosed that on February 11, 2007, he had given his campaign a $30,000.00 payment, which was identified as a contribution.
After his successful campaign, in a letter dated August 28, 2007, Rep. Lorusso requested an advisory opinion from the Board. He stated that he had become aware of a clerical error in his campaign disclosure report and was “requesting ... permission to correct [his] report.” According to his letter:
I..¡Specifically, on February 11, 2007, I wrote a personal check out of my private checking account in the amount of $30,000.00 to my campaign fund.... The amount of my personal check was duly recorded on the Summary Page of my [campaign disclosure] report.... However, this $30,000.00 was erroneously listed on Schedule A-l as a contribution ... when in fact it should have been properly designated as a personal loan to my campaign fund on Schedule B.
Therefore, I respectfully request that I be allowed to file a Supplemental Candidate’s Report to properly reflect on Schedule B that the $30,000.00 personal check I wrote out of my private checking account was in fact a loan, instead of a contribution.
In response to his letter, the Board issued an advisory opinion on September 14, 2007, concluding that the Campaign Finance Disclosure Act prohibited amendment of the campaign disclosure report Rep. Lorusso had timely filed before the election. In so concluding, the Board reasoned that “any amendment and repayment would result in a violation ... since the information would have been inaccurately reported at a time it was pertinent to the voters.” Rep. Lorusso filed a motion for reconsideration on December 21, 2007. A minute entry in the record notes that on December 18, 2009, the Board affirmed its earlier decision.
On May 12, 2010, Rep. Lorusso emailed the Board and “requested a declaratory opinion regarding the recent finding on [his] request to amend [his] campaign [disclosure] report.” The request was taken up at a public hearing held on June 18, 2010. A majority of the Board voted to “reaffirm the earlier decision declining *715 [Rep. Lorusso’s] request.” On November 19, 2010, a written opinion was issued in conformity with the Board’s ruling. Rep. Lorusso timely appealed.[3]
| LIABILITY OF THE APPEAL
The Board asserts that this court is without authority to review its declaratory opinion in this matter. Relying on Du-plantis v. Louisiana Board of Ethics, 2000-1750, p. 1 (La.8/23/01), 782 So.2d 582, 588, in which the Louisiana Supreme Court considered whether it was proper for the court of appeal to review advisory opinions issued by the Board and held that the appellate courts are without jurisdiction to review such advisory opinions, the Board suggests that the declaratory opinion it issued on November 19, 2010, was in actuality an advisory opinion. As such, it urges, the decision is not one that is reviewable by this court.
The Board buttresses its contention by asserting that the declaratory opinion before us merely provides advice to Rep. Lorusso and, therefore, is subject to the Dwplantis holding, claiming that it: (1) does not present a justiciable controversy; (2) is not a ruling that is enforceable by Rep. Lorusso; (3) does not include any factual findings based on an investigation and adversarial hearing; and (4) does not fall within the scope of the ambit of the Board’s constitutional authority.
In reaching its conclusion that advisory opinions are not reviewable by the courts of appeal, the Dwplantis court examined the constitutional grant of power in La. Const, art. X, § 21, which permitted the legislature to enact the Code of Ethics. That provision states, in relevant part, that “[djecisions of a board shall be appealable, and the legislature shall provide the method of appeal.” 2000-1750 at p. 8, 782 So.2d at 587. The Dwplantis court explained that an advisory opinion is usually initiated by correspondence, rendered on a set of facts for which there is no investigation or adversarial hearing, and leaves the applicant in no different position than before the issuance of the Board’s advice. 2000-1750 at pp. 8-9, 782 So.2d at|5587-88. The Dwplantis court contrasted the procedures required before the Board can find a violation of the Code of Ethics. Those include, among other things, commencement by a sworn complaint, notice and an investigation of the charges, a public hearing, legal representation of the accused, the right to cross-examine and call witnesses, and the right to present evidence, and the imposition of a wide range of penalties. 2000-1750 at pp. 9-10, 782 So.2d at 588. Based on these differences, the Dwplantis court concluded that advisory opinions were not “decisions” under La. Const. Art. X, § 21. 2000-1750 at pp. 8-14, 782 So.2d at 588-91. Looking at the provisions of La. R.S. 42:1142, set forth in Part III (entitled Administration, Procedure, and Enforcement) of the Code of Ethics, which provided the procedure for appellate review of decisions of the Board, the Dwplantis court determined the provision of La. R.S. 42:1142, stating that “[a]ny advisory opinion issued to any person or governmental entity by the board or panel ... is subject to the supervisory jurisdiction of the appellate court ...” was unconstitutional. 2000-1750 at pp. 13-14, 782 So.2d at 591.
*716 Subsequent to Duplantis, by Acts 2008, 1st Ex.Sess., No. 24, § 1, the legislature amended the provisions of La. R.S. 42:1142. La. R.S. 42:1142 A presently provides in relevant part:
Whenever action is taken against any public servant or person by the board or panel or by an agency head by order of the board or panel, or whenever any public servant or person is aggrieved by any action taken by the board or panel, he may appeal therefrom to the Court of Appeal, First Circuit, if application to the board is made within thirty days after the decision of the board becomes final. Any refusal by the board or panel to issue a declaratory opinion or any preliminary, procedural, or intermediate action or ruling by the board or panel is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the Constitution of Louisiana. (Emphasis added.)
[(¿The legislature simultaneously modified Part III (Administration, Procedure, and Enforcement) of the Code of Ethics by enacting La. R.S. 42:1141.1, which addresses “Declaratory opinions.” According to these provisions:
A. Upon application of a public servant, other person, or agency, the board may declare rights, status, and other legal relations established by the provisions of this Chapter or by any other law within its jurisdiction or under opinions issued by the board, either before or after there has been a breach thereof. The applicant may seek to have the board determine any question of construction or validity arising under the provisions of this Chapter or by any other law within its jurisdiction.
B. The board’s power to declare rights, status, or legal relations established by the provisions of this Chapter or by any other law within its jurisdiction or under opinions issued by the board, or the construction of said laws or opinions, is not limited or restricted to any proceeding where a declaratory opinion is sought in order to terminate a controversy or remove an uncertainty.
C. The purpose of a declaratory opinion is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations established by the provisions of this Chapter or by any other law within the board’s jurisdiction or under opinions issued by the board, or the construction of said laws and opinions.
D. A declaratory opinion is a decision of the board. The decision of the board on an application for a declaratory opinion shall be rendered after a public hearing and only after the requesting party, all other interested parties, and the board’s staff have been afforded full and complete opportunity to present evidence, testimony, and argument. A declaratory opinion of the board shall be considered a final decision and shall be reviewable by the Court of Appeal, First Circuit, pursuant to R.S. 42:1142.
E. The board may refuse to render a declaratory opinion where such opinion, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding.
F. When a declaratory opinion is sought, the public servant, other person, or agency, as necessary and appropriate for the rendition of a declaratory opinion, who has or claims any interest which would be affected by the opinion shall be made a respondent and given notice of the request and of all public hearings conducted pursuant to the request.
|7G. The procedures for seeking a declaratory opinion and for the public hearing on such request shall be provid *717 ed by rule adopted by the board pursuant to the Administrative Procedure Act.
We initially point out that despite the bequest of power given by the legislature in Subsection G of Article 1141.1, permitting the Board to adopt rules to govern the procedure for applicants seeking a declaratory opinion, we have found none.[4] But the record establishes that the Board took up Rep. Lorusso’s request for a declaratory opinion in a public hearing conducted on June 18, 2010.
Mindful that the legislature did not otherwise define declaratory opinions in the Code of Ethics, we turn to the Louisiana Code of Civil Procedure for guidance. See La. C.C. art. 11 (technical terms must be given their technical meaning when the law involves a technical matter) and art. 13 (laws on the same subject matter must be interpreted with reference to each other). La. C.C.P. art. 1871 explains the grant of authority given to the courts to render declaratory judgments, stating:
Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for; and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The declaration shall have the force and effect of a final judgment or decree.
Declaratory judgments may be rendered “whether or not further relief is or could be claimed.” La. C.C.P. art. 1871. Nevertheless, a declaratory judgment has the force and effect of a final judgment or decree and may serve as the basis for a petition seeking further relief. See La. C.C.P. arts. 1871 and 1878.
The court may refuse, however, to render a declaratory judgment or decree | ¿where such judgment or decree, if rendered, will not terminate the uncertainty or controversy giving rise to the proceeding. La. C.C.P. art. 1876. Our jurisprudence has limited the availability of declaratory judgments by holding that “courts will only act in cases of a present, justicia-ble controversy and will not render merely advisory opinions.” Church Point Wholesale Beverage Co., Inc. v. Tarver, 614 So.2d 697, 701 (La.1993).
A justiciable controversy is a real and substantial controversy admitting of specific relief through a decree of conclusive character. Am. Waste & Pollution Control Co. v. St. Martin Parish Police Jury, 627 So.2d 158, 161 (La.1993). It has been generally defined as a dispute between “adverse parties with opposing claims ripe for judicial determination,” involving “specific adversarial questions asserted by interested parties , based on existing facts.” Prator v. Caddo Parish, 2004-0794, p. 6 (La.12/1/04), 888 So.2d 812, 816.
In the context of declaratory judgment, a justiciable controversy must involve uncertain or disputed rights in an immediate and genuine situation, and must be a substantial and actual dispute as to the legal relations of parties having real, adverse interests. Steiner v. Reed, 2010-1465, p. 6 (La.App. 1st Cir.2/11/11), 57 So.3d 1188, 1192. Such a justiciable controversy must be distinguished from one that is merely hypothetical or abstract, or one presenting an issue that is academic, *718 theoretical, or based on a contingency that may or may not arise. Id.
In this case, we conclude that Rep. Lo-russo has presented a justiciable controversy insomuch as it is a request for a determination of his right to amend his campaign disclosure report, i.e., a request for resolution of an uncertain right and a demand for relief presented in an immediate and genuine situation. Without an | flopportunity to amend his campaign disclosure report to indicate that the $30,000.00 payment was a loan rather than a contribution, Rep. Lorusso is unable to raise funds to reimburse his patrimony for that payment. More importantly, without an opportunity to amend, Rep. Lorusso ostensibly fails to accurately disclose information required to be reported under the Campaign Finance Disclosure Act. A ruling in favor of Rep. Lorusso would terminate the litigation. Hence, resolution of the issue of whether he is entitled to amend his campaign disclosure report constitutes a substantial and actual dispute as to the legal relations between Rep. Lorusso and the Board, each of whom has a real and actual interest in the resolution of the issue raised in Rep. Lo-russo’s request for declaratory relief. Applying the present provisions of the law, we conclude that we have jurisdiction to review the declaratory opinion issued on November 19, 2010, because as a declaratory opinion which presents a justiciable controversy, it is appealable under La. R.S. 42:1141.1 D.[5] Accordingly, we turn to our review of the merits of Rep. Lorus-so’s justiciable controversy.
DECLARATORY RELIEF
As set forth by the Board in its opinion, the issue under review is whether Rep. Lorusso may amend his campaign disclosure report, filed on March 1, 2007, to represent that the receipt of a $30,000.00 payment he made to his campaign was a loan rather than a contribution as he indicated at the time he filed it. In deciding that Rep. Lorusso may not do so, the Board relied on the provisions of La. R.S. 18:1495.4 to conclude that Rep. Lorusso was required to file a campaign disclosure |inform; that under La. R.S. 18:1495.5 B(4), the report was required to contain information on the contributions received during the reporting period, including the name and address of each person who contributed, the aggregate amount of all contributions, as well as the value of all in-kind contributions, received during the reporting period; and that under La. R.S. 18:1495.5 B(9), the report was required to contain the date and amount of each loan made or received by the candidate, along with the name and address of the lender.[6]
*719 The Board concluded that an amendment to allow Rep. Lorusso to change the designation of the $80,000.00 payment he made to his campaign from a contribution Into a loan apparently would ipso facto result in a finding of a violation of the duty a candidate has under La. R.S. 18:1505.1[7] to accurately disclose information required to be reported to the Board as well as the imposition of civil penalties under La. R.S. 18:1505.4 B.[8] In reaching its conclusion that Rep. Lorusso “cannot amend his report after the election to now disclose the receipt of a loan to his campaign,” the Board reasoned that the campaign disclosure report, filed prior to the election, “discloses to the public and the electorate the identity of who is funding a candidate’s campaign and what expenditures have been made with such funds.”
At this juncture, we point out that, under the statutory duty of La. R.S. 18:1505.1, having indicated that the information provided in his campaign disclosure report inaccurately disclosed the nature of his $80,000.00 payment, Rep. Lorusso is apparently already subject to a potential violations complaint simply by requesting whether he is entitled to amend his report because the request itself points out the inaccuracy of the information he reported. If he is not permitted to amend, he has violated La. R.S. 18:1505.1 because of his “failure to disclose accurately any information required to be reported by this Chapter.” By denying Rep. Lorusso an opportunity to amend his campaign financial disclosure report, the I^Board itself becomes an instrumentality in the continued inaccuracies contained in the campaign disclosure report.
Our review of the law has led us to the Louisiana Administrative Code, Title 52, entitled “Ethics,” which contains in Chapter 16, entitled “The Board as Supervisory Committee of the Louisiana Campaign Finance Disclosure Act,” § 1606, addressing registration and reporting as well as incomplete and incorrect forms. Section 1606, promulgated in accordance with La. *720 R.S. 42:1134 A,[9] states in pertinent part:
A. The staff may, without board action, request additions and corrections to any ... report filed by a ... candidate or other person which would constitute a minor violation of the Campaign Finance Disclosure Act. However, the staff shall report any uncorrected or material violations of the Campaign Finance Disclosure Act to the [BJoard.[10]
While it is evident that this rule does not directly address the situation that Rep. Lorusso has presented, implicit in its provisions is a procedure to permit additions and corrections to any report filed by a candidate. We have, however, found no provisions in either the rules duly promulgated by the Board under its rulemaking powers, see La. R.S. 42:1134 A and La. R.S. 18:1141.1 G, or in the statutory scheme 11sadopted by the legislature, which expressly provide a procedure for amending a timely-filed but inadvertent and, therefore, inaccurate representation in a campaign disclosure form.
Since nothing in La. R.S. 18:1495.4 or 1495.5 prohibits an amendment of a campaign disclosure report and in light of the Board’s rule in § 1606 of Title 52 of the Louisiana Administrative Code, which implicitly suggests that a procedure exists to permit additions and corrections to any report filed by a candidate, because the failure to modify his campaign disclosure report to accurately reflect the requisite information mandated under La. R.S. 18:1495.5 B appears to constitute a violation of the Code of Ethics, we conclude that Rep. Lorusso is permitted to amend his report. In so concluding, we do not express any opinion on either the propriety of the Board instituting violation charges against Rep. Lorusso or the potential disposition of those charges should they duly be pursued against him in accordance with La. R.S. 18:1505.4 B and 1511.5, as well as §§ 701-708 of the Louisiana Administrative Code, Title 52, Chapter 7, entitled “Complaints,” and any other applicable procedure relative to an alleged violation of the Code of Ethics involving an application of the Board’s burden of proof in a properly-instituted hearing conducted in accordance with due process.
DECREE
For these reasons, we find that Rep. Lorusso may amend his March 1, 2010 campaign disclosure form to accurately reflect the information he must disclose in the report he filed in conjunction with his campaign for the Louisiana State House of Representatives, District 94, for an election held on March 10, 2007. The Board’s declaratory opinion is reversed. Appeal costs in the amount of $391.16 are 114assessed against the Board of Ethics, functioning as the Supervisory Committee on Campaign Finance Disclosure.
REVERSED AND RENDERED.
*721 GUIDRY, J., dissents and assigns reasons.
WELCH, J., concurs in result.
WHIPPLE, J., concurs.

. See generally La. R.S. 18:1481-1532.

. La. R.S. 18:1495.4B(4) states in relevant part, “A report shall be filed for a candidate for each regularly scheduled election in which the candidate participates according to the following schedule.... Each candidate shall file a report no later than the tenth day prior to the primary election which shall be complete through the twentieth day prior to the primary election.”

. The record does not contain notice of mailing of the Board’s opinion. In his "Notice of Appeal,” Rep. Lorusso represents that he received written notice on January 5, 2011, and that his motion is timely. See La. R.S. 42:1141.1 D, cross-referencing § 1142A, which allows an appeal to this court "if application to the [B]oard is made within thirty days after the decision of the [B]oard becomes final.” The Board has conceded the timeliness of Rep. Lorusso’s appeal.

. Thus, we pretermit review of the propriety of Rep. Lorusso’s request for a declaratory opinion by email,

. If the opinion issued on November 19, 2010 were not a "declaratory opinion” within the specifications set forth in La. R.S. 42:1141.1, then it is an implicit refusal by the Board to issue a declaratory opinion which, under La. R.S. 42:1142, would be subject to this court’s supervisory jurisdiction.

. La. R.S. 18:1495.5 B provides in relevant part:
Each report required to be in conformity with this Section shall contain the following information ...
(4) Contribution(s) received during the reporting period for which the report is being completed shall be reported, and the same shall be reported irrespective of the amount thereof as follows:
(a) The full name and address of each person who has made one or more contributions to and which have been received and accepted by the candidate during the reporting period; the aggregate amount of such contributions, except in-kind contributions, from each person, and the date and amount of each such contribution; and a brief description of each in-kind contribution from each person, the valuation thereof made by the candidate and the campaign *719 treasurer, and the date(s) of the in-ldnd contribution.
(b) The aggregate amount of all contributions, other than in-kind contributions, received and accepted during the reporting period.
(c) The aggregate valuation of in-kind contributions received during the reporting period....
(9) The date and amount of each loan for campaign purposes made or received by the candidate to or from any person or political committee during the reporting period, together with the full name and address of the lender, of the recipient of the proceeds of the loan, and of any person who makes any type of security agreement binding himself or his property, directly or indirectly, for the repayment of all or any part of the loan.
See also La. R.S. 18:1483(6) defining a contribution and specifically providing that a contribution does not include a loan; and La. R.S. 18:1483(10) defining a loan.

. La. R.S. 18:1505.1 C states, "Failure to disclose or failure to disclose accurately any information required to be reported by this Chapter shall constitute a violation of this Chapter.”

. La. R.S. 18:1505.4 provides in relevant part:
B. Any candidate ... or any other person required to file reports under this Chapter who knowingly and willfully fails to disclose, or knowingly and willfully fails to accurately disclose, any information required by this Chapter to be disclosed in the reports required herein, may be assessed a civil penalty for each day until such information is disclosed by amendment to the appropriate report of such candidate, political committee, or other person. "Knowingly and willfully”, for purposes of this Subsection, means conduct which could have been avoided through the exercise of due diligence.

. La. R.S. 42:1134 A states:
(1) The board may adopt, amend, repeal, and enforce rules and regulations in the manner provided by the Administrative Procedure Act to carry out the provisions and purposes of this Chapter and any other law within its jurisdiction. (Footnote omitted.)
(2) The board shall provide for procedural rules governing the establishment and implementation of time periods for the dismissal of a complaint, the filing of a formal charge, the notification of the parties of the rendition of a decision, and the assessment of penalties,

. "Staff” is defined in § 101, of Chapter 1 of Title 52, as "the ethics administrator, the executive secretary and the employees of the Ethics Administration Program.” And "Ethics Administration Program” is defined in that same section as "the unit of the Department 0f Civil Service and those employees who provide staff support for the [B]oard.”