JOHNSON, Justice,
dissents and assigns reasons.
hi disagree with the majority’s finding that the constitutional challenge is premature and presents no justiciable controversy. Therefore, I must respectfully dissent.
This Court has recognized that the issue of when a controversy is justiciable as opposed to an advisory opinion is a difficult one. Prator v. Caddo Parish, 04-0794 (La.12/1/04), 888 So.2d 812, 816; Louisiana Independent Auto Dealers Assn. v. State, 295 So.2d 796, 798 (La.1974). The nature of LFT’s suit is one for declaratory judgment. In Louisiana Independent Auto Dealers Assn., this Court looked to Professor Borchard’s treatise on declaratory judgments for guidance in setting forth standards for determining when a controversy is “justiciable:”
It is sufficient if a dispute or controversy as to legal rights is shown, which, in the court’s opinion, requires judicial determination — that is, in which the court is convinced that by adjudication a useful purpose will be served. The requisites of justiciability must be present. Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there Lmust be a controversy between the plaintiff and a defendant, subject to the court’s jurisdiction, having an interest in opposing his claim. Unless the parties have such conflicting interests, the case is likely to be characterized as one for an advisory opinion, and the controversy as academic, a mere difference of opinion or *766 disagreement not involving their legal relations, and hence not justiciable.
[[Image here]]
Actions or opinions are denominated “advisory,” when there is an insufficient interest in the plaintiff or defendant to justify judicial determination, where the judgment sought would not constitute specific relief to a litigant or affect legal relations or where, by inadequacy of parties defendant, the judgment could not be sufficiently conclusive.
295 So.2d at 798-99 (citing Borchard, Declaratory Judgments (2d Ed.1941)). This Court has further recognized that "[t]he difference between an abstract question and a controversy contemplated by the Declaratory Judgment Act is necessarily one of degree and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.” Pmtor, 888 So.2d at 816 (internal citations removed).
Based on my review of relevant jurisprudence, I find LFT’s declaratory judgment action sufficiently meets the requirements of a “justiciable controversy.” I recognize that no waivers have yet been granted by BESE, thus LFT cannot point to any particularized harm directly resulting from a waiver. However, in my view, the harm relevant to this Court’s consideration is the unconstitutional delegation of legislative authority. It is the structure of the waiver system itself that is alleged to be unconstitutional. Here, there is an actual and substantial dispute over the constitutionality of the delegation of authority given to BESE by the Act. The alleged improper delegation of authority has already occurred in the drafting of the Act. Because this is a facial challenge to the constitutionality of the text of the Act itself, I find it irrelevant that the Act has not yet been applied, or that LFT cannot point to a specific harm caused by the granting of a waiver. If the establishment of the waiver |,«¡system (i.e. the text of the Act itself) impermissibly delegates legislative authority to BESE, no further injury should be required for the Act to fail a facial challenge. There is no action BESE can take in implementing the Act that changes the issue of whether this delegation of authority, on its face, is unconstitutional. In my mind, the fact that no waiver has yet been granted does not deprive the dispute of sufficient immediacy and reality, so as to bar a declaratory judgment on the basis of lack of a justiciable controversy.
For this same reason, I do not agree that the necessity of a request for a waiver operates as a contingency which may not arise, thus making the issue hypothetical and premature. The constitutional attack is based on a formal defect in the Act. The alleged unconstitutionality is presented as a facial challenge to the text and structure of the Act itself. The Act as written either does, or does not, improperly delegate legislative authority to BESE. A waiver application, and subsequent application of the Act, should not be a prerequisite to determining whether the statute, on its face, is unconstitutional.
Declaratory judgments serve a useful purpose and provide the practical effect of terminating the controversy giving rise to the proceeding. The issue here concerns genuine rights between the State and LFT, and a declaratory judgment provides concrete relief by terminating the controversy if the Act is found unconstitutional. Moreover, the issue is purely legal, and its resolution is not dependent upon the presentation of involved factual evidence, or further development of the record. Thus, waiting until a waiver is granted would not advance this Court’s ease and ability to address the issue of improper delegation of legislative authority.
*767 In sum, this Court was asked to declare whether the Act is unconstitutional on its face because the Act itself delegates legislative authority to BESE. The issue is not |4a dispute of a hypothetical or abstract nature. The controversy is definite and affects the legal relations of parties that have adverse legal interests. The controversy is real and substantial, and is distinguished from an opinion advising what the law would be upon a hypothetical set of facts. The issue is purely legal, and ripe for decision now. In my view, to require LFT to wait until the Act is applied before a facial challenge can be made based on the text of the Act itself defeats the purpose of declaratory judgments.
In reviewing the merits of the constitutional challenge, I would find Act 749 of 2010, comprising La. R.S. 17:4041 through 17:4049, to be unconstitutional on its face. I agree with the trial court’s finding that Act 749 unconstitutionally delegates legislative authority to BESE.
The Louisiana Constitution divides the powers of government into three separate branches: legislative, executive and judicial. La. Const, art. II, § 1. Our constitution further provides that no branch may exercise power belonging to another. La. Const, art. II, § 2. The legislative power of the State rests exclusively in the Legislature. La. Const, art. Ill, § 1; La. Const, art. II, § 1; State v. Alfonso, 99-1546 (La.11/23/99), 753 So.2d 156, 160. Thus, it is axiomatic that the legislature is vested with the sole law-making power of the State. See, e.g., State v. Dick, 06-2223 (La.1/26/07), 951 So.2d 124, 133.
Because of the constitutional separation of powers, delegation of legislative power is generally prohibited. State v. Miller, 03-0206 (La.10/21/03), 857 So.2d 423, 427. However, as an exception to this rule, this Court has recognized that the legislative branch has the authority to delegate to administrative boards and agencies of the State the power to ascertain and determine the facts upon which the laws are to be applied and enforced. See, City of Alexandria v. Alexandria Fire Fighters Ass’n, 1,220 La. 754, 758, 57 So.2d 673, 674 (La.1952); State v. Guidry, 142 La. 422, 76 So. 843 (1917). This Court has noted that “delegation of certain administrative functions is necessary because of the vast amount of governmental functions that are vested in the legislative branch, which cannot possibly enact and re-enact detailed laws to cover every situation during rapidly changing times.” State v. Alfonso, 99-1546 (La.11/23/99), 753 So.2d 156, 160.
To determine whether a particular delegation of legislative authority is unconstitutional, this Court established the following rule in Schwegmann Brothers Giant Super Markets v. McCrory, Commissioner of Agriculture, 237 La. 768, 788, 112 So.2d 606, 613 (1959):
So long as the regulation or action of the official or board authorized by statute does not in effect determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within prescribed limits some fact upon which the law by its own terms operates, such regulation is administrative and not legislative in its nature.
This rule requires courts to distinguish between “delegations of purely legislative authority, which necessarily violate the separation of powers, and delegations of ministerial or administrative authority, which do not.” State v. All Pro Paint & Body Shop, Inc., 93-1316 (La.7/5/94), 639 So.2d 707, 711. Guided by these principles, this Court has developed a three-part test to ascertain whether a statute unconstitutionally delegates legislative authority. Id. at 712. A delegation of authority to an administrative agency is constitutionally valid if the statute: 1) contains a clear *768 expression of legislative policy; 2) prescribes sufficient standards to guide the agency in the execution of that policy; and 3) is accompanied by adequate procedural safeguards to protect against abuse of discretion by the agency. Id.; State v. Barthelemy, 545 So.2d 531, 534 (La.1989); Adams v. State, 458 So.2d 1295, 1298 (La.1984); State v. Union Tank Car, 439 So.2d 377, 381 (La.1983). This test serves | fitwo functions vital to preserving the separation of powers required by the Constitution:
First, it insures that the fundamental policy decisions in our society will be made not by an appointed official but by the body immediately responsible to the people. Second, it prevents judicial review from becoming merely an exercise at large by providing the courts with some measure against which to judge the official action that has been challenged.
All Pro Paint, 639 So.2d at 712. Moreover, this Court has explained the importance and necessity of each part of the test:
Application of the Schwegmann three-prong test ensures the elected members of the Louisiana Legislature retain all legislative power by insisting that they, not their delegates in the executive branch, make the difficult policy choices for which they are accountable to the public through the democratic process. Furthermore, by insisting that the enabling statute prescribe not only the legislative policy to be enforced by the agency but also sufficient standards to guide or “canalize” the agency’s execution of the legislative will, the test ensures the statute delegates only administrative or ministerial authority and guards against delegations of unbridled legislative discretion and the danger of “delegation running riot.” Additionally, because even delegations of administrative or ministerial authority require agencies to exercise some discretion in executing the legislative will, the requirement of adequate procedural safeguards ensures the agency exercises that discretion in accordance with the policy and standards prescribed in the enabling statute and consistent with democratic values served by public participation and judicial review.
Id. at 712-13.
Application of the three-prong test set forth in Schwegmann and All Pro Paint compels me to conclude that Act 749 fails to establish a constitutionally valid delegation of power to BESE. Examining the first prong of the test, I find Act 749 does contain a sufficient expression of legislative policy. La. R.S. 17:4042 states that BESE may grant a waiver application “with the goal of improving quality of instruction and student academic achievement. ...”[1] The State and BESE assert that Act 749 provides flexibility and autonomy for purposes of achieving that stated goal. 17Further, they assert the Act gives BESE an opportunity to level the playing field between local school districts and charter schools, which enjoy greater autonomy than traditional public schools. This stated goal is further reflected in La. R.S. 17:4043, which provides that waiver applicants must describe how the proposed waiver will increase the quality of instruction for students, improve the academic achievement of students, and improve teaching effectiveness within schools. Thus, I find the Act sets forth a defined statement of legislative policy sufficient to satisfy the first prong of the test.
Although I find the Act meets the first prong of the test, it is clear the standards accompanying this declaration of legislative intent do not provide adequate guidelines for BESE in determining whether to grant a waiver, and thus the Act fails to *769 satisfy the second prong of the test. This analysis is simplified because the Act contains absolutely no standards to guide BESE in carrying out the waiver process set forth by the legislature. While § 4043 sets forth particular information that must be included by a school governing authority in its waiver application, there are no corresponding standards or criteria provided to guide BESE in applying, weighing, or processing this information as part of the waiver process.
In testing the constitutional sufficiency of the standards prescribed in the Act, regard must be given to the purpose and scope of the Act, the subject matters covered therein, the duties prescribed, and the broad or narrow powers granted. All Pro Paint, 639 So.2d at 716. Here, the extent of the power granted to BESE is broad and great. The statute, as written, vests BESE with unbridled discretion to exempt a school district from almost any provision in the Education Code. Contrary to this Court’s pronouncements in Schweg-mann, the Act gives BESE power to exercise primary and independent discretion in granting or denying waivers. The legislature has essentially ^delegated to BESE the power to determine what law will apply in a particular school district, rather than delegating to BESE the power to determine whether a school district meets standards set by the legislature for the waiver. Because the legislature has failed to devise a scheme which provides intelligible standards sufficient to guide BESE in the waiver process, the Act runs afoul of the principles set forth in Schwegmann and All Pro Paint. When the delegated authority to an administrative agency is unfettered, its exercise becomes legislative in nature, and contravenes the constitutional mandate of separation of powers.
I also find Act 749 fails to meet the third prong of the test, which requires the delegation of authority be accompanied by adequate procedural safeguards to protect against abuse of discretion by BESE. As this Court recognized in All Pro Paint, delegations of power require agencies to exercise some discretion in executing the legislative will. 639 So.2d at 713. Thus, requiring procedural safeguards ensures that the agency exercises that discretion in accordance with the policy and standards prescribed in the enabling statute. Id. The only provisions of the Act that can reasonably be construed as procedural safeguards are the requirement that BESE submit a yearly report to the Senate Committee on Education and the House Committee on Education, and the provision limiting waivers to a four-year period. La. R.S. 17:4046(B); La. R.S. 17:4045(A). The annual report would include a summary of waivers granted and BESE’s statement as to whether such waivers increased the quality of instruction to students and improved the academic achievement of students. La. R.S. 17:4046(B). However, because there are no standards in the Act itself, it is impossible for this report, submitted long after the waiver is granted, to ensure that BESE has exercised its discretion in accordance with standards set forth by the legislature. Nothing in the Act details standards as to whether a waiver should be 19granted initially. Thus, nothing in the Act safeguards against abuse by BESE in granting waivers. And, while waivers are only granted for a maximum four-year term, the Act also allows BESE to extend these waivers. La. R.S. 17:4045(C).
For these reasons, I would find the statutory provisions of Act 749 impermissibly delegate legislative authority to BESE, giving BESE unfettered discretion to determine which waivers to grant based solely on BESE’s opinion, without any legislative guidance as to how that opinion is to be formed or what guidelines should be used in considering waiver applications. This conclusion reinforces the policies un *770 derlying Schwegmann and All Pro Paint by insisting that the legislature, not BESE, make the actual decision as to whether provisions of the Education Code should apply to all public schools. Moreover, such a holding would ensure that members of the legislature “retain all legislative power by insisting that they, not their delegates in the executive branch, make the difficult policy choices for which they are accountable to the public through the democratic process.” See, All Pro Paint, 689 So.2d at 712. I find the Act, as written, fails in these principles by creating a wholesale surrender of this legislative responsibility to BESE.
This Court has recognized that to successfully challenge a legislative act as unconstitutional on its face, the challenger must establish that no set of circumstances exists under which the Act would be valid. State v. Powdrill, 95-2307 (La.l1/25/96), 684 So.2d 350, 357; see also, City of New Orleans v. Louisiana Assessors’ Retirement and Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1, 19. Here, because I find the text and structure of the Act itself impermissibly delegates legislative authority to BESE, I also find there are necessarily no circumstances under which application of the Act can operate constitutionally. Thus, I would find the Act unconstitutional on its face.

. See also, Minutes, House Committee on Education, 2010 Reg. Sess., May 6, 2010, at 6.